# C. W. Hunter *v.* Walter H. Harrison *et al.*[*]

## (*Nashville,* December Term, 1926.)

### Opinion filed, December 11, 1926.

**1. LANDLORD AND TENANT. Lien for rent.**

The history of landlord lien in the state indicates an unvarying purpose to extend and increase the protection afforded by its laws. (Post, p. 593.)

**2. LANDLORD AND TENANT. Lien for rent. Purchaser. Act 1923, chapter 71; Acts 1899, chapter 22; Acts of 1825, chapter 21; Code, sections 3539 to 3542 inclusive. Construed.**

That one who takes from the tenant the lien encumbered crop and sells it and appropriates to his own use, the proceeds becomes a "purchaser" in fact and is as much within the purview of section 7 of the Acts of 1923 as one who is a "purchaser" in name. A factor or person acting as selling agent only in good faith does not subject himself to liability as a purchaser. (Post, p. 596.)

**3. STATUTES. Construction. Repeal by implication not favored.**

It is a maxim of construction that statutes must be sustained if possible; that repeals by implication are not favored and that conflict relied on to destroy the older act must be apparent and beyond question. (Post, p. 597.)

**4. SAME. Same. Legislative construction.**

It is a rule well established that where the Legislature puts a construction on an act, a subsequent like ·enactment in the same terms would **prima facie**, be understood in the same sense, though later repealed. (Post, p. 598.)

Citing: 6 Am. & Eng. Ency. Law, p. 1035; Goldsmith v. Hampton, 5 C. B. (N. S.), 94; Williams v. Lear, L. R., 72, B. 285; Ward v. Beck, 13 C. B. (N. S.), 668; Arrington, Trustee, v. Cotton, 1 Baxter (60 Tenn.), 316, 25 R. C. L., 1041, 1035, 1015; Standard Oil Co. v. State, 117 Tenn., 618, 639, 640; Brown v. Hamlett, 8

Lea (176 Tenn.), 734, 735; Railroad v. Byrne, 119 Tenn., 332; Railroad v. Husen, 95 N. S., 465, 472.

5. LANDLORD AND TENANT. Rent note.

Under section 6 of the Acts of 1923, a note signed by the tenant will supply the requirement of an itemized claim required by the statute. (Post, p. 600.)

---

*Headnotes 1. Landlord and Tenant, 36 C. J., section 1512; 2. Statutes, 36 Cyc., p. 1153; 3. Statutes, 36 Cyc., p. 1154; 4. Statutes, 36 Cyc., p. 1111; 5. Statutes, 36 Cyc., p. 1111; 6. Statutes, 36 Cyc., p. 1116; 7. Statutes, 36 Cyc., p. 1112; 8. Landlord and Tenant, 36 C. J., section 1512; 9. Landlord and Tenant, 36 C. J., section 1563.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. WIGHTMAN HUGHES, Chancellor.

RANDOLPH & RANDOLPH, for Plaintiff Appellee.

WILSON, GATES & ARMSTRONG, for Defendant Appellant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This bill was filed by a landlord against his tenant to recover from him rent evidenced by note and to recover from his co-defendants, Stewart-Gwynne Company, cotton factors and commission merchants, such part of the rent as the landlord might be unable to collect from the tenant. It was charged that certain cotton raised on land of complainant in Shelby county, and subject to his landlord's lien, had been delivered by the tenant to the said

Stewart-Gwynne Company, under some form of agreement, who sold the cotton and applied the proceeds thereof to the payment of an alleged indebtedness of the tenant to them.

A demurrer interposed by Stewart-Gwynne Company was sustained by the Chancellor, and the bill dismissed as to said defendant, and the complainant has appealed. The Chancellor was apparently of opinion, and it is here insisted, that chapter 71 of the Acts of 1923, providing for a landlord's lien, did not fix liability against a cotton factor or commission merchant who received cotton subject to a landlord's lien from a tenant and sold the cotton and appropriated and applied the proceeds to an indebtedness due to him from the tenant; that the act of 1923 formed a general and complete scheme of legislation on the subject, and impliedly repealed chapter 22 of the Acts of 1899, by the terms of which any person who sells the crop of a tenant subject to a landlord's lien and *applies the proceeds to the payment of the tenant's indebtedness to himself* is declared liable "as a purchaser" to the landlord.

The effect of the construction thus given to the act of 1923, and the insistence here made on behalf of the appellee, is that landlords are, since the act of 1923, cut off from the remedy expressly conferred by the act of 1899 against persons who receive from the tenant lien-incumbered cotton and dispose of it and appropriate to themselves the proceeds; that under the law as it now exists the remedy of the landlord is limited to those cases in which the party to whom the cotton is delivered directly purchases it, either paying the proceeds to the tenant, or otherwise accounting to him therefor.

The history of landlord lien legislation in this state indicates an unvarying purpose to extend and increase the protection afforded by these laws. The original Crop Lien Act was pressed in 1825, being chapter 21, and in 1858 the subject was more completely covered and time expressly provided for the running of the lien, and liability fixed against a purchaser with notice for damages sustained by the landlord by reason of such purchase. In the same year, the Code of 1858 was adopted and the acts previously passed were brought into the Code as sections 3539 to 3542, inclusive, with the proceedings for the enforcement of the lien more specifically provided for and with the right of recovery made more definite as, ''the value of the property, so that it does not exceed the amount of the rent and damages.'' By chapter 72 of the Acts of 1879, the Code was amended in a most material respect, by eliminating the words, in section 3542, ''with notice of the lien,'' thus greatly extending and strengthening the remedy of the landlord.

In *Armstrong* v. *Walker,* 77 Tenn., 156, this court, speaking through Mr. Justice FREEMAN, construing Code, section 3542 (apparently overlooking the amendment of 1879, which, however, was not material to the issue passed on), held that the right of recovery ''from the purchaser of the crop, or any part of it,'' did not apply to a party selling property as an agent for a tenant, such as a factor or commission merchant, that such a party is a ''seller'' only, and that the third party, to whom the property is in turn sold, is the ''purchaser.'' And the court appears to have reached this conclusion in that case, despite the fact that it appeared that the commission merchant who sold the cotton for the tenant

154 Tenn.—38.

appropriated the proceeds to the payment of the debt due the commission merchant, by the consent or direction of the tenant.

In 1899, by chapter 22, the legislature, doubtless realizing the weakness of the law as construed in that case, and the opportunity for collusive evasion of the lien in dealings between a tenant and a commission merchant, or other agent, enacted, by way of amendment to the existing law, that "any factor, broker, commission merchant, or other person who sells the crop of a tenant, or any part of it, with or without notice of such lien, and applies the proceeds to the payment of the tenant's indebtedness to himself, shall be liable as a purchaser to the person entitled to the rent."

And, by the second section of this act, the law as it had been amended by the act of 1879 was re-enacted in so far as it provided that "any person entitled to rent may recover from the purchaser of the crop, or any part of it, the value of the property, so that it does not exceed the amount of the rent and damages." It will be observed that, after having by the first section defined the liability of one who sold the crop and applied the proceeds to his own debt as being that of "a purchaser," the legislature proceeded in the second section to use the term "purchaser" with this definition evidently in mind.

In 1905, by chapter 32, the legislature extended the term of the lien from three months to six months, and thus the law stood until 1923, when the act now before us for construction was passed. We think it is apparent that it was the intention of the legislature by the passage of this act to compile and codify and make clearer and more effective the landlord's crop lien law in this

state. The caption is broad and comprehensive and the various phases of the lien rights and incidentals remedies are dealt with in more detail than theretofore had been the case.

By section 9, it is provided "that all civil laws and parts of civil laws in conflict herewith are hereby repealed." And it is the insistence of counsel for appellee that, both by operation of this repealing clause and of the general rule that an act purporting to cover an entire subject repeals by implication all former statutes upon the same subject, the act of 1899, supra, was repealed, and upon the filing of the bill in this cause was of no effect; that the rights and remedies of the landlord are limited to the provisions of the act of 1923·

It is strenuously insisted for the appellant that the act of 1899, while taking the form of an amendment to the then existing landlord's lien law, was, in effect, separate legislation, and that, in any event, it was not in conflict with any provisions of the act of 1923, and that for both reasons it was not repealed thereby.

In view of the conclusions hereinafter announced, it becomes unnecessary directly to decide whether or not the latter act repealed the former, but it must be conceded that there is force in these contentions, especially when application is given to certain maxims of construction, such as the requirement that statutes must be sustained if possible, that repeals by implication are not favored, and that the conflict relied on to destroy the older act must be apparent and beyond question. And, just here, attention must be called to a proposition already suggested, that a construction that would operate to eliminate from the existing law the salutary provision ex-

pressly declared by the act of 1899 in favor of the land-
lord against any person who receives and disposes of and
appropriates the proceeds from the crop subject to a
lien, would be in the teeth of the intention evidenced by
the legislation of many years to increase and extend these
rights and remedies rather than otherwise.

Reverting to a consideration of the terms of the act of
1923, by section 7 it is provided "that purchasers, with
or without notice, of crops subject to the liens aforesaid,
shall be liable to the lienholder for the value of the
crops so purchased, if the crop is delivered to such pur-
chaser before July 1, after the crop year." Now, con-
ceding that the act of 1899 has been repealed tech-
nically by the act of 1923, is it clear that it was not
the intention of the Legislature, by the language just
quoted, to continue in force and affirm to the landlord his
right, previously enjoyed under the specific provisions
of the act of 1899, of recourse against any person who
receives and appropriates the proceeds of the lien crop
and becomes in this sense a purchaser, despite the fact
that he does not retain the specific property, but sells it
to a third party?

Reliance is had quite positively upon the decision in
*Armstrong* v. *Walker,* supra. If it be conceded that that
case was correctly decided, and that the language of sec-
tion 7 of the act of 1923 is not materially different from
that construed in *Armstrong* v. *Walker,* it must also be
conceded that the word "purchasers" has since that de-
cision received a statutory construction by a positive
enactment, doubtless passed to meet and cure the con-
ditions resulting from the decision in that case; and we
are also confronted with the history heretofore related,

showing a continuing disposition on the part of the legislature to strengthen rather than weaken the landlord's lien law—to which is added, perhaps, the force of a practical construction recognized and applied for the past quarter of a century of the meaning of this term in connection with the landlord's lien law.

It is a rule well established that ''where the Legislature puts a construction on an act, a subsequent cognate enactment in the same terms would, *prima facie,* be understood in the same sense.'' VI Am. & Eng. Ency. Law, p. 1035.

In the several English cases cited under this text it was uniformly held that terms once construed and defined by legislative enactments, though later repealed, when thereafter employed in cognate or kindred legislation, will be given the construction and effect theretofore accorded to like terms by the lawmaking power. *Goldsmid* v. *Hampton,* 5 C. B. N. S., 94; *Williams* v. *Lear,* L. R. 72 B., 285; *Ward* v. *Beck,* 13 C. B. N. S. 668.

This rule of recognition of legislative construction appears to have instant application. When the legislature has by express enactment once declared that given words or terms shall have a certain meaning and effect, if in a subsequent enactment dealing with the same general subject the same terms are used, it is reasonable to assume that the intention of the legislature was to use the terms to the same effect. Familiar illustrations of legislative construction of words and phrases in a general law are to be found in the opening sections of our Uniform Laws and the bankruptcy acts of Congress. The same words occurring in any subsequent kindred act would properly be given a like meaning, even though the defi-

nition was not expressly repeated. In the case of *Arrington, Trustee* v. *Cotton,* 1 Bax., 316, this court treated an act purporting to construe a section of an act formerly passed, providing in general terms that teachers of common schools should be paid, so as to expressly require these payments to be made by the county trustee, as applicable to a similar likewise indefinite provision in a general act, later passed, to reorganize and regulate the common schools. This was held to be true, despite the fact that the general act last passed purported to cover the whole field and also contained provisions for the repeal of all laws in conflict therewith. Much of the reasoning in that case tends to sustain the rule of construction above announced.

In 25 R. C. L., 1041, this general statement is found: "Legislative policy clearly deducible from the consistent legislation of Congress or a state legislature is a legitimate factor in determining the meaning of subsequent acts open to a construction, and such policy is not to be regarded as abandoned further than the terms and objects of the new legislation unmistakably require."

And on page 1035 of the same volume, it is said:

"Where the language of a statute is in any manner obscure or of doubtful meaning, the court in construing such statute may with propriety recur to the history of the times when it was passed and of the act itself, in order to ascertain the reason as well as the meaning of particular provisions ·in it." And again on page 1015: "Where the language of a statute is ambiguous, it is proper to consider the conditions with reference to the subject-matter that existed when it was adopted, the occasion and necessity for the law, and the causes which

induced its enactment, or, in other words, the mischief sought to be avoided and the remedy intended to be afforded.''

In the course of the opinion by Mr. Justice SHIELDS in *Standard Oil Co.* v. *State,* 117 Tenn., 618, 639, 640, he incorporates and approves expressions from many leading authorities in harmony with these principles. No proposition is better established than that an interpretation which defeats any of the manifest purposes of a statute cannot be accepted. Every statute should be construed with reference to its object. ''The real intention will always prevail over the literal use of the terms.'' *Brown* v. *Hamlett,* 8 Lea, 734, 735. And again, ''the inquiry is, not what is the abstract force of the words used, but in what sense were they intended to be used as found in the statute.'' *Railroad* v. *Byrne,* 119 Tenn., 332.

Applying these rules of construction, is it reasonable to assume that it was the intention of the legislature, in passing the general law of 1923, shown on its face to have had as its purpose the amplifying, clarifying, and strengthening of the rights and remedies of the landlord's lien, to use the term ''purchasers'' in the narrow and limited sense at one time judicially given it, rather than in the broader and more effective sense expressly accorded to it by the act of 1899? It must be conceded that the purpose of the act of 1923 was to protect and strengthen the lien; and it cannot be denied that to so construe ''purchaser'' in section 7 as to limit the liability to those who technically become themselves the buyers of the crops—those in whom the title and possession of the thing itself rests—is to carry literalism far. In this view, one who willed to defeat the lien would

need only to pass on the goods and appropriate the proceeds. The only use the merchant, or any other purchaser, other than the manufacturer, has for cotton is to sell it. If by taking it over from the tenant under an agreement to sell it and keep for himself the proceeds, "any person" can evade the lien, his full purpose is satisfied, and the lien law becomes a farce. "In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." *Railroad* v. *Husen,* 95 N. S., 465, 472.

The conclusion is irresistible—giving application to the intent of the legislature, in the light of its express previous declaration and the whole course of legislation on the subject, and having particularly in mind the manifest general object of the law—that one who takes from the tenant the lien-incumbered crop and sells it and appropriates to his own use the proceeds becomes a "purchaser" in fact, and is as much within the purview of section 7 of the Act of 1923 as one who is a "purchaser" in name.

Of course, under this construction the factor or other person who acts as a selling agent only, and does not resort to the subterfuge indicated to become himself the beneficiary of the sale of the lien-incumbered crop, does not subject himself to liability as a purchaser.

It is also said that the present suit may not be maintained because of failure to conform to the requirements of section 6 of the Act of 1923, which provides that, before any proceeding shall be instituted for the enforcement of the lien, the lienholder shall itemize his claim, and have an affidavit made thereto stating that the claim is correct, owing, unpaid, and *bona fide,* and not entitled to any

credit or set-off. We think it clear that this section has no reference. to a claim liquidated and evidenced by a note signed by the tenant; and the bill, which is sworn to, alleges in this case that the amount of the notes exhibited with the bill is due and unpaid. This is a substantial compliance with the affidavit requirement in the statute.

For the reasons stated in this opinion, the decree of the chancellor must be reversed, and the cause remanded.