MRS. W. E. McLEOD BRAMLETT *v.* W. P. HURLEY.

(*Jackson,* April Term, 1930.)

Opinion filed May 31, 1930.

654

Woods & Brooks and Galbraith & Mitchell, for plaintiff in error.

W. K. Abernathy and Millard E. Lee, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

Plaintiff appeals from a judgment denying her claim of a landlord's lien on a tenant's crop for a sum due her by a purchase-money note for two horses, secured by retention of title in her as the seller. The case was tried on a stipulation of facts before the Circuit Judge without a jury. Plaintiff relies on Section 3 of Chapter 71, Acts of 1923 which provides, "that the landlords or persons controlling land by lease or otherwise shall have a lien on all crops of tenants or share-croppers *grown during the year* on the land, for the payment of necessary fertilizer, implements, work stock, feed for stock, seed, and labor, insecticide, furnished to and *used* by such tenants or share-croppers *in the production of the crops.*" (Italics ours.)

Two questions are made, first that this Act is unconstitutional because the subject, namely, "work stock," is not expressed in the title or caption. The caption reads: "AN ACT to provide a general landlords' crop lien law for Tennessee; to declare liens for landlords and others controlling land for rent, supplies, furnishings, and labor, on crops grown on the land; to provide for the priority of such liens over incumbrances and charges; to provide remedies against purchasers of crops subject to the liens; to provide a method of enforcement of the liens; and to repeal all laws and parts of laws in conflict herewith."

We do not think this objection well taken. Notice is given in the caption of the intention to provide "a general landlords' crop lien law for Tennessee." Liens for rent, supplies and furnishings are expressly declared in the caption, as provided for in Sections 1, 2 and 3, respectively, of the Act, "work stock" furnished being among the items enumerated. Quite evidently work

stock was treated as within the definition of "furnishings" referred to in the caption. This is consistent with the policy of the legislature as declared in former acts providing for landlord liens, Shannon's Code 5303. It was said in *Hunter* v. *Harrison*, 154 Tenn., 590, that "the history of landlord lien legislation in this State indicates an unvarying purpose to extend and increase the protection afforded by these laws." It could not be' assumed that in enacting this general lien law of 1923, the intention was to omit the right of lien for the item of work stock which had theretofore been included. We think it apparent, not only that the Legislature intended by the use of the word "furnishings" in the caption to embrace "work stock . . . furnished," but that this item is fairly within the meaning of the word furnishings as used in its caption context.

The question next made presents more serious difficulty. Is the purchase price of these horses,—not the value of their use in the making of the crop only,—within the Act? While this Court appears not to have dealt with this question in any reported case, the Court of Appeals, in *Pettigrew* v. *Hodges*, 5 Tenn. App., 599, denied the lien for purchase money for stock on facts much the same as those here presented.

In that case the plaintiff had sold the property under a conditional sale contract and sought to invoke the lien for the unsatisfied balance. The Court held plaintiff estopped, by his election to pursue the one remedy, from reliance on the other, and further held that the effect of applying the lien to such a case would be to recognize its extension from year to year and to succeeding crops, so long as the debt might remain unpaid, and that this was inconsistent with the intention of the statute. The latter ground has application here.

■ We think it manifest that this lien was intended to apply to a current year and crop only. Running through the Act are references to crops grown on the land "during the year," clothing, etc., supplied "during the year;" and fertilizer, implements, work stock, etc., "furnished to and *used* by such tenants or sharecroppers in the production of the crops,"—theretofore, in Section 3, described as "grown during the year." The lien is not a continuing lien, but is restricted to supplies and furnishings furnished year by year, in contribution to the making of the crop of the year. Insofar only as the supplies or furnishings are to go into a given crop and contribute to its making is the lien to be recognized.

Now while the lien might apply to rental or other use value of live stock furnished a tenant, or sharecropper, for the making of a particular crop, the Act may not be fairly construed as giving a lien for the entire sale value of such stock, having a more or less permanent and yearly recurring use. Furnishings of such character do not go into the current crop in any such proportion of their value as to come within the contemplation of the Act.

■ Moreover, there is force in the insistence that when work stock is sold to a tenant under a title retention contract, full security being thereby provided for independently of this lien, a waiver of the lien is implied and results. An intention is thus manifested to rely on a security wholly apart from and independent of the landlord's lien. This view finds support in the well-known custom and results of the relationship between farm landlords and crop tenants. The crop yield in any given year is rarely enough to warrant the expectation that the tenant can make full payment therefrom for live stock purchased, after meeting current expenses for sup-

plies and rent and the necessities of life. Since it could not be in the contemplation of the parties that the crop yield would be sufficient to pay in full for operating equipment of a lasting and more or less permanent character, such as work stock, we think it fair to assume that when the sale is made under a conditional sale contract the seller intends to rely thereon, rather than on the statutory lien.

While the Courts are divided as to what will operate as a waiver of common-law and statutory liens, the disposition is to hold the lien waived whenever the circumstances and conditions afford indication of a purpose to rely on other and independent security. See 17 R. C. L., pages 607, 608, wherein it is said that, "it is generally held that the question whether a lien has been waived is one of intention to be gathered from the relation of the parties and the circumstances of the case."

As early as *White* v. *Dougherty,* 1 Martin and Yerger, at page 323, this Court recognized that a lien would be waived "by taking distinct and independent securities." In *Manufacturing Co.* v. *Weatherly,* 101 Tenn., 317, it was held that a mechanic's lien was waived by a retention of title contract by the terms of which the time of complete payment was extended beyond the lien period. Indeed, there is much authority for the rule that the taking of collateral security is generally a waiver of a statutory lien. See 2 Jones on Liens, Paragraph 1519; Phillips on Mechanics' Liens, Paragraphs 117, 276, 483, and cases cited in note on page 608, Vol. 17, R. C. L. Also see *Grant* v. *Strong,* 85 U. S. 623 (21 L. Ed., 859 and note).

In 37 C. J., p. 335, it is said that, "an express stipulation and agreement of the parties for other security excludes the idea of lien and limits their rights to the ex-

tent of the express contract which they have made.'' In a note on page 336, idem, it is said that ''where one having a lien by statute also reserves a lien by special contract, the two liens being inconsistent, it must be presumed that the parties intended to substitute the lien by contract for the statutory lien,'' citing *Howe* v. *Wiscasset Brick. Co.*, 78 Me., 227.

A distinction seems to be generally taken between the effect of contracting for other and additional security (1) after the lien has once attached,—and (2) the making of such a contract originally. The instant case is in the second class, as to which the presumption of waiver of the statutory lien more strongly applies.

We are of opinion that the circumstances and conditions herein appearing warrant the conclusion that plaintiff, by her retention of title to the horses as security, waived her right to rely on the landlords' lien. It results that the judgment against her lien claim must, on the grounds indicated, be affirmed.

Mr. Justice Cook concurs in the result.