JOHN B. WILLIAMS, Guardian, v. FOUNT J. HOLLIS et al.

Middle Section. December 12, 1931.

Petition for Certiorari denied by Supreme Court, April 9, 1932.

Morrison & Morrison, of Lawrenceburg, for appellants.
Haggard & Haggard, of Waynesboro, for appellee.

DeWITT, J. On May 20, 1927, John B. Williams was appointed and he qualified as the regular guardian of William Clyde Williams, a minor, as successor to Fount J. Hollis, who had been removed as guardian of said minor by the County Court of Wayne County. Upon his removal Hollis was ordered to pay over the sum of $4843.45 as the balance of the estate of said minor in his hands but he failed to do so. On July 16, 1928, the bill in this cause was filed by John B. Williams as such guardian against Fount J. Hollis as principal and J. R. Hollis, W. R. J. Hardwick, Charles L. Williams, W. E. Kelly, W. P. Wright and J. R. Story, as sureties upon bonds given by Fount J. Hollis as guardian under an appointment by the County Court of Wayne County, made on or about July 3, 1916. Upon the hearing the Chancellor rendered a decree against all of said defendants for $5729.88 and costs—excepting that J. R. Story had died and the decree was rendered against his personal representatives. The decree provided that Fount J. Hollis and J. R. Hollis and the personal representatives of J. R. Story were primarily liable for said sum, as J. R. Hollis and J. R. Story were sureties upon the bond last executed. From this decree J. R. Hollis and the representatives of J. R. Story have appealed and assigned errors in this court.

The primary obligation of J. R. Story and J. R. Hollis is based on an instrument delivered to the county court clerk and attached to

a bond of Fount J. Hollis as guardian of William Clyde Williams, dated February 7, 1921, filed with the clerk, acknowledged and approved in open court, as shown by the signature of the county judge. The instrument, a power of attorney, is as follows:

"To Harvey Bromley, County Court Clerk.

"You will please sign our names to the guardian bond of Fount J. Hollis, guardian for William Clyde Williams, penalty of bond $8000. This Jan. 7th, 1921.

"J. R. Story,
"J. R. Hollis,
                    his
"Jas. E. X Guinn.
                    Mark

"F. J. Hollis, Witness,
"Buford Hollis, witness."

Harvey Bromley died before the institution of this suit. He did not sign the names of these persons to the bond. The power of attorney was securely fastened to the face of the bond, which was written in the book of guardians' bonds in the office of the county court clerk. The Chancellor found that the power of attorney was so fastened to the bond by Bromley; and he held that thereby the said parties became effectually bound as sureties thereon and therefore liable to the complainant. The Chancellor reached similar conclusions of fact and of law as to the original bond. On July 3, 1916, Fount J. Hollis, executed and filed a bond, which appears in the book of guardians' bonds as follows:

"State of Tennessee, Wayne County.

"We, Fount J. Hollis, principles, are held and firmly bound to the State of Tennessee, in the penal sum of seven thousand five hundred dollars.

"Witness our hands and seals, this 3rd day of July, A. D. 1916.

"The condition of the above obligation is such, that whereas the above Fount J. Hollis has been appointed guardian of William Clyde Williams, minor heir of Nannie Williams, deceased.

"Now, if the said Fount J. Hollis shall well and truly perform the duties which are or may be required of ——— by law, as such guardian, then this obligation to be void; otherwise to remain in full force and virtue.

"Fount J. Hollis (Seal)

"Acknowledged and approved in open court, this — day of ———, 18—.

"H. C. Sims, Chairman."

The following power of attorney was delivered to the county court clerk and securely fastened upon the face of the aforesaid bond:

"West Point Banking Co.,

"West Point, Tenn., Nov.——

"To Harvey Bromley, Clerk of the County Court, Waynesboro, Tenn.

"You are hereby authorized and directed by the undersigned to sign our respective names to a bond in the sum of seventy-five hundred dollars ($7,500), as sureties for Fount J. Hollis, as guardian for William Clyde Williams, said bond is in the sum of $7,500 dollars, and we bind ourselves by your signing our names thereto, and our estates, to pay the penalty of said bond in the event the said Fount J. Hollis, as such guardian fails to fully account for whatever funds coming into his hands as such guardian or fails to fully perform his duties as such guardian as provided by law, and according to the provisions of said bond. This is to cover the funds of the said William Clyde Williams, now in the hands of the Clerk and Master at Waynesboro, Tennessee, or which may hereafter come into said Clerk and Master's hands for said minor in said cause.

"This the 22nd day of November, 1915.

"J. R. Hollis,
"W. R. J. Hardwick,
"Chas. L. Williams,
"W. E. Kelly,
"W. D. Wright,

"State of Tennessee,
"Lawrence County.

"Personally appeared before me J. A. Welch, N. P., in and for said State and County, the above bondsman has appeared before me and acknowledged their signatures to said bond for the purposes therein contained or expressed, This July 1, 1916.

"J. A. Welch,
"Notary Public."

The Chancellor found that this instrument was so fastened to the bond by Harvey Bromley; that thereby the parties signing it became effectually bond and liable to the complainant for the benefit of his ward.

It appears that the sole estate of the minor, William Clyde Williams, consisted of a share in the proceeds of sale of timber on land of which his mother had died seized and possessed; that the sale was made under a decree of the chancery court, the proceeds being paid to the Clerk and Master; that under a mistake of law it was first contemplated that the guardian would be appointed by said court, but that counsel advised the parties that a guardian should be appointed by the county court, and the name of the Clerk and Master was stricken out and the name of the county court clerk sub-

stituted. There is no evidence that this alteration was made after the power of attorney was signed and acknowledged. On July 3, 1916, and thereafter F. J. Hollis as such guardian received from the Clerk and Master sums of money belonging to his ward and by reason of his appointment and qualification he continued to act as such guardian, handling the funds of his ward; and when removed he was obligated to pay over the aforesaid sum of $4853.45.

It appears further that J. R. Hollis knew that the authority originally written to the Clerk and Master to sign his name to the bond had been changed to an authority to Harvey Bromley, clerk, for on July 2, 1927, he admitted in writing that he had given the authority to Harvey Bromley, clerk. This writing was in the form of a notice signed by him and served on the minor and J. B. Williams, his guardian, reciting:

"Whereas, by order bearing date November 22, 1915, and acknowledged before J. A. Welch, Notary Public, on July 1, 1916, I, the undersigned J. R. Hollis, gave Harvey Bromley, clerk of the County Court of Wayne County, Tennessee, authority to sign my name as surety to a bond of Fount J. Hollis as guardian of the said William Clyde Williams in the penalty of seventy-five hundred dollars," further reciting that on January 7, 1921, he gave the authority to Bromley to sign his name to the bond of Hollis for $8000; that neither of said bonds had been signed pursuant to said instruments; that all authority given under the same was withdrawn. J. R. Hollis, therefore, cannot now be heard to say or contend that he did not authorize Bromley to sign his name as surety on the bonds. So are these appellants, if they became sureties, estopped to deny the validity of the bond or the legality of the proceedings under which the money was obtained by the guardian. Shannon's Code, sections 1095-1097. Nor would the plea of the Statute of Frauds or the defense of want of consideration be available to defeat a recovery. If J. R. Hollis and Story became sureties, the possession of the funds by the guardian was a sufficient consideration; and if they became sureties the Statute of Frauds was complied with. These matters would be foreclosed by an affirmative answer to the determinative issue whether or not the execution and delivery of the written authorizations by Story and Hollis and the act of the clerk in attaching them to the bonds operated to constitute them as sureties thereon. It is unnecessary to go back to the transactions of July, 1916, for the case must be decided upon the transactions of January, 1921. If J. R. Hollis and the representatives of Story became liable thereon, their liability extended not only to the future action of the guardian, but related back to his first appointment, and is co-extensive with his guardianship, they, as the last sureties taken being, under the statute (Shannon's Code, section 4265), first liable,

and then the prior sureties, Crook v. Hudson, 4 Lea, 450; Tennessee Hospital v. Fuqua, 1 Lea, 608; Jamison v. Cosby, 11 Hump., 273.

No direct evidence is offered, or perhaps could be obtained, that Bromley himself attached the letter of authorization to the bond; nor is there any evidence to the contrary. But since it was so attached and under the bond appears the entry, "Acknowledged and approved in open court this 7th day of February, 1921, E. V. Turman, Judge," it is to be presumed that Bromley had so attached the letter to the bond; and that both he and the county judge believed that the effect thereof was to record these proffered sureties as if they were signers to the bond, their own signatures and agreement becoming a part of the bond itself. The presumption is that these officers were endeavoring to do their lawful duty by taking proper security, without which they would not have permitted Hollis to continue as guardian.

Upon the effect of these transactions we have been unable to find any decision precisely apposite. The question must be determined upon principle with a view to the attainment of justice. The contentions made by the appellants are literal and technical in character. The appellants fully intended to become sureties on the bond. They directed the clerk to sign their names thereto. If he had actually done so they could have offered no defense. To them the thing operative to constitute them sureties was not the mere signing by the clerk, but it was their signed agreement to be sureties. They had no interest in a signing by the clerk except as a matter of form. The thing which was intended to give existence to the obligation was the letter of authority signed by them and delivered to the clerk. His failure to sign their names was not contrary to their ultimate purpose, for the material thing was not the signing pro forma, but the agreement to be sureties on the bond. What was done did not alter their real and primary purpose or affect the rights and obligations which they intended to assume. No discretion was given to the clerk. He was directed to record them as obligated upon the bond. Any interpretation that thus they did not become sureties would be narrow and inadequate. These appellants cannot escape liability upon grounds so purely technical. It is not by a strained interpretation that the conclusion is reached that the act of the clerk in attaching to the bond the letter of authority and direction bearing the original signatures of Hollis and Story was in substance a signing, an affixing of their sitnatures to the bond.

The decision in Gilman v. Kibler, 5 Humph., 19, does not control this question. It does not compel the conclusion here that the letter of Hollis and Story was a mere authority to create an obligation, which by the failure to sign was never created. In that case it appeared that one Creasay executed a note to Jacob and Samuel

Kibler. After its maturity Gilman wrote a letter to the Kiblers reciting the note and saying, "should you require security, I request you to place my name on the note." They did not do so. The placing of Gilman's name on the note was entirely a matter of their own desire and discretion. Jacob Kibler died in a few months. Suit was brought more than a year after the letter was written by Gilman. His name was thereafter placed on the note by Samuel Kibler. The court held that Gilman's letter was a mere authority to create an obligation if the agent should think it for his interest to do so; that the acceptance and execution of the power could not be left an open question indefinitely, and at some future time, or under other circumstances, be given and performed at the election of the Kiblers.

The facts of vital difference are that no discretion was given to Bromley, except, of course, that of declining to accept these parties as sureties; that he did immediately accept them and undertook to perfect their obligation to be sureties; and that it was his duty to take security or the bond would not be made.

Upon another ground the decree appealed from may be sustained. There was at least an attempt to execute the power. The intention to execute clearly appears. If the execution was defective it was done by mistake. The clerk must have believed that he was performing his duty, although it was defectively done. He must have believed that by attaching to the bond the letter of authority he was making the original signatures a part of the bond. Applicable to this would be the power of a court of equity to interpose and supply a defect of form in favor of the minor to whom the clerk was under obligation to provide by an execution of the power. When a party undertakes to execute a power, but by mistake does it imperfectly, equity will interpose to carry his very intention into effect, and that too in aid of those who are peculiarly within its protective favor. This is an extraordinary jurisdiction, and is only exercised in behalf of those who are considered as possessing meritorious equities or against those who have no equally meritorious defences. 1 Story's Equity Juris. (13 Ed.), secs. 241-242; 2 Pomeroy's Equity Juris. (4 Ed.), secs. 589, 590, 834; 21 R. C. L., 810; 49 C. J., 1303; Sugden on Powers (3 Am. Ed.), 91. See cases cited thereunder.

It is expressly declared in some of the texts and decisions that one of the defects that may thus be supplied, where the intention to execute appears, is the want of signature by the donee of the power. A case in point was Smith v. Ashton, Ch. Cas., 264, Freem. K. B., 308, where a deed executing a power was prepared and engrossed, but the donee died before he could execute it, and the execution of the power was sustained in equity under its jurisdiction to aid defective execution. The court said:

"The substantial part is to do the thing; and therefore where it is clear and indubitable, the neglect of the circumstances shall not avoid the act in equity."

Upon these principles we are satisfied with the decree of the chancery court and it will be affirmed. A decree will be entered in this court in favor of complainant against J. R. Hollis and the personal representatives of J. R. Story, deceased, for the sum of $4843.45, with interest from July 16, 1928, and all costs of this cause.

Faw, P. J., and Crownover, J., concur.