McCUISTON v. HAGGARD et al.—109 S. W. (2d) 413.

Eastern Section.   April 3, 1937.

Petition for Certiorari denied by Supreme Court, October 2, 1937.

Burn & Michael, of Sweetwater, for appellant.
Walter H. Cheers, J. B. Swafford, B. G. McKenzie, and G. H. West, all of Dayton, for appellees.

McAMIS, J. This action was instituted by George N. McCuiston, suing as next friend for his son, John Calvin McCuiston, a non compos mentis, against Wallace G. Haggard, guardian for said John Calvin McCuiston, and the sureties on the guardian's bond. The bill sought recovery for losses alleged to have resulted from illegal investments and loans made by the guardian.

Complainant has appealed from the decree of the chancellor dismissing the bill and the assignments of error made in this court limit our consideration to two loans made by the guardian to the American Trust Company and the Tennessee Valley Farms, Inc., and an investment of $8,000 in bonds of the city of Dayton purchased by

the guardian from the Dayton Bank & Trust Company. The chancellor was of tht opinion that the loans to the American Trust Company and the Tennessee Valley Farms, Inc., each in sum of $800, were illegal and unauthorized investments of the ward's funds but, upon petition to rehear, it was held that the subsequent approval of these loans by the county court of Rhea county, even though originally made without any security, relieved the guardian and his sureties from further liability as to these two items. In so holding we think the learned chancellor was in error.

John Calvin McCuiston is a world war veteran and the defendant guardian is amenable to the Uniform Veterans' Guardianship Statute, 1932 Code, Sections 8541 to 8558, inclusive. The liability of the guardian primarily depends upon a construction of the Code, Section 8552, which provides as follows: "Every guardian shall invest the funds of the estate in such manner or in such securities, in which the guardian has no interest, as allowed by law or approved by the court."

On Oct. 15, 1931, the guardian loaned $800 to the American Trust Company, of which he was an officer, upon the unsecured note of said corporation, and, on August 30, 1931, he loaned a like amount to Tennessee Valley Farms, Inc., upon its unsecured note.

Except as authorized by statute a guardian is without authority to lend or invest the ward's funds (Freeman v. Citizens' National Bank, 167 Tenn. 399, 70 S. W. (2d), 25) and the question to be determined is whether the guardian has complied with the provisions of the statute above quoted, the effect of which is to authorize the guardian to invest the funds of the estate in two classes of securities. The first class includes securities authorized by statute and the second those approved by the court and which may or may not be sufficient to specifically comply with the statute.

It is not contended that these loans fall within the first class but the insistence, sustained by the chancellor upon petition to rehear, is that the subsequent approval of the loans by the county court operates to relieve the guardian and his sureties from liability.

We construe the statute as conferring upon the guardian complete and unrestrained authority to invest in such securities as are authorized by law but, as to securities not specifically authorized by law, he must first secure the approval of the court out of which the trust is being administered. The cardinal rule in the construction of statutes is to effectuate the legislative intent and an interpretation of a statute which defeats the manifest purpose of the act cannot be accepted. Hunter v. Harrison, 154 Tenn., 590, 288 S. W., 355. The general law (Williams' Code 1934, Secs. 9596.1 to 9596.3, inclusive), regulating the form and character of investments by trustees, guardians, and other fiduciaries, is sufficiently comprehensive to include most of the bonds and securities generally regarded as the safest and

most desirable and it seems unreasonable to assume that the Legislature, in its attempt to safeguard such investments, after specifically authorizing the investment of such funds in securities generally regarded as the most secure, should confer unlimited authority upon the guardian to invest in other securities without the approval of the court. As to all forms of investment not specifically authorized by law we think the Legislature intended that the guardian should act under the direction and supervision of the court. The general policy and purpose of the act, according to this construction, could not be accomplished if, as here contended by the guardian, such investments could be made by the guardian and his liability left to depend upon subsequent approval by the court. If so construed, an unscrupulous or incompetent guardian by corrupt or unwise investments might accomplish the dissipation of the trust before his acts could be brought to the attention of the court. It might be argued that the ward would have his remedy upon the bond of the guardian, but this would require the expense of independent litigation, leaving the ward, meanwhile, without funds for his necessary support and maintenance. Such a construction seems to us out of harmony with the general purpose and policy of the act, and the construction that the guardian must first obtain the approval of the court before investing in securities not authorized by law seems to us clearly justified by its language.

When the defendant guardian loaned the guardianship funds upon unsecured notes without first having obtained the approval of the court a right of action accrued to the ward for any damages resulting from such breach of duty, and the sureties on the guardian's bond could not be relieved of this liability in an ex parte proceeding before the county court to have such illegal and unauthorized investment ratified and approved. We reach the conclusion, therefore, that the judgment of the county court purporting to ratify and approve the two loans to the American Trust Company and the Tennessee Valley Farms, Inc., was coram non judice and void and that the chancellor was in error in holding to the contrary.

The case of In re Parker, 168 Tenn., 327, 77 S. W. (2d), 816, followed by the chancellor and cited here by counsel for appellees, is clearly distinguishable from the case at bar for the reason that in that case the guardian secured the approval of the county court before making the investment and the situation here presented was not considered. However, the language of the opinion disposing of the question presented in that case indicates that the court construed the act as conferring power upon the county court to control and regulate the investments of the guardian.

With respect to the purchase of bonds of the City of Dayton, it appears that the guardian applied to the county court of Rhea county

by petition for authority to make the purchase and that this investment was not made until after an order of the court was entered upon the guardian's petition expressly authorizing the purchase of said bonds. It is conceded that it was within the jurisdiction of the county court of Rhea county to authorize the purchase of said bonds, as held in Re Parker, supra, but it is insisted that the guardian was personally interested in the purchase of said bonds and that his personal interest vitiates the order of the county court authorizing their purchase.

It does not appear that the guardian had any personal interest in the purchase of these bonds. However, it appears that on the same day the purchase of the bonds was negotiated he discussed with Mr. Crawford, the president of the bank, the making of loans to two of his sisters. Mr. Crawford states in his testimony that, while these transactions were related, they were not dependent upon each other. The bonds provide for 5½ per cent. interest and at the time of their purchase by the guardian the City of Dayton had not defaulted upon any of its bonds with the possible exception of a technical default of approximately thirty days following the failure of the American National Bank of Dayton when, it appears, the matter was handled to the satisfaction of bondholders pending this temporary financial embarrassment on the part of the city. In any event, it appears from Mr. Crawford's testimony that these bonds were sold only a short time before the transaction here involved at par value and have since that time sold at par. Mr. Crawford further testified that in his opinion the bonds were worth the amount paid by the guardian.

These bonds were purchased by the guardian on March 1, 1932. The court will take judicial notice of the severe depression existing at that time. The guardian and the judge of the county court of Rhea county were doubtless familiar with the financial condition of the City of Dayton and the wisdom of purchasing the bonds was a matter within their discretion and the mere fact that the bank loaned $7,500 to sisters of the guardian on the same day or a few days thereafter is insufficient to vitiate, for fraud, the judgment of the county court. It does not appear that the guardian acted fraudulently or withheld material information in his possession from the consideration of the county judge. The statute requires the guardian to invest the funds of his ward and we think, under the facts stated, in view of the economic conditions prevailing at that time, his purchase of bonds which had previously, and only a short time before their purchase, sold at par, approved by the county court, must be sustained.

We shall now consider errors conditionally assigned by appellee, S. K. Hicks, administrator of the estate of A. P. Haggard, deceased, one of the sureties upon one of the guardian's bonds.

The first of these assignments is that the court erred in holding

that the suit instituted against A. P. Haggard prior to his death could be revived against his administrator within six months after his qualification as such and erred in overruling the administrator's plea in abatement setting up his exemption from suit for six months after his qualification as provided by sections 8220-8222 of the 1932 Code.

That the statute does not apply to judgments rendered against the deceased, nor to suits pending against him at his death, which may be revived without delay, is held in Roche v. Washington, 7 Humph. (26 Tenn.), 142; Watkins v. Cleveland National Bank, 1 Shan. Cas., 439.

The second of these assignments is that the court erred in hearing the case at chambers without notice to the defendant Hicks, administrator, or his solicitor. Since the principal on the bond was represented at the hearing and a full hearing was had before the chancellor announced his conclusions, the error complained of, if such it was, is not shown to have resulted in any harm and it is a well-recognized rule that the court will not reverse for harmless error.

The third error conditionally assigned by S. K. Hicks, administrator, is to the effect that the court erred in not holding that an insolvency proceeding in the chancery court of Rhea county operated to enjoin the further prosecution of this suit. It does not appear that there was any attempt to specifically enjoin the further prosecution of this suit and we think the chancellor correctly held that a suit pending against the deceased at the time of his death might be prosecuted, by revivor, against his administrator to final judgment. The third assignment of error is therefore without merit and must be overruled.

By the fourth assignment of error it is insisted that complainant failed to prove that A. P. Haggard was surety on said guardian's bond between September 28, 1931, and November 1, 1931, or that there was any loss on any investment made by the guardian during said period. That A. P. Haggard was surety on the guardian's bond between September 28, 1931, and November 1, 1931, appears from the testimony of J. C. McKenzie, who was county judge of Rhea county at that time. This testimony is unrefuted and it does not appear that any question was raised in the lower court with respect to the execution of the several bonds by any of the sureties.

As to the second question raised under this assignment of error, it appears that both the note of American Trust Company and of the Tennessee Valley Farms, Inc., were executed to the guardian prior to September 28, 1931, the date of the execution of the bond by A. P. Haggard. According to the note of American Trust Company, appearing in the record as an exhibit, it was executed on Oc-

tober 15, 1929. The note of the Tennessee Valley Farms, Inc., appears to have been executed on August 20, 1931.

Under Shannon's Code, section 4265, new sureties on a guardianship bond are cumulative to former sureties, the last sureties taken being first liable and so on in the inverse order in which the bonds were taken. Williams v. Hollis, 14 Tenn. App., 374, 378, and see other cases therein cited. The chancellor so held and of his holding there appears to be no complaint. What has just been said is also responsive to the fifth assignment of the defendant below, S. K. Hicks, administrator, and both the fourth and fifth assignments are overruled.

The decree to be here drawn will conform to the conclusions hereinbefore stated and the cause will be remanded for the execution of the order of reference directed by the Chancellor's first decree. One-third of the costs below will be taxed to complainant and the remainder to defendants. Costs of appeal will be equally divided.

Portrum and Ailor, JJ., concur.