ANDERSON FISH & OYSTER COMPANY, INC., and Marvin
Hayes, *v.* HAYDEN W. OLDS, Director of Game & Fish
Commission of the State of Tennessee.

*(Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

HENRY C. FOUTCH and JAMES M. GLASGOW, Assistant Attorneys General, for appellant.

CHALES L. CORNELIUS, W. OVID COLLINS, JR., and JAMES M. SWIGGART, all of Nashville, and MILES & MILES, of Union City, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The question here is, can crappie fish be taken from Reelfoot Lake at all times of the year, excluding April 15th to June 15th, and sold generally or is their sale limited to restaurants?

The two lower courts held that they could be sold generally to anyone and everyone and their sale was not limited to restaurants. The Commissioner has seasonably excepted to this holding and has perfected his appeal to this Court via application for certiorari which has heretofore been granted. Able briefs have been filed, arguments heard and we now have the matter for disposition.

There is no dispute about the facts. Anderson is a wholesale dealer in fish. Hayes is a commercial fisherman, operating on Reelfoot Lake. These two parties entered into a contract whereby Hayes agreed to sell Anderson crappie fish to meet Anderson's needs. The Director of Game & Fish Commission of the State takes the position that under the Act crappie fish can only be sold to restaurants while obviously Anderson and Hayes take the position that they can be sold generally. Thus we have a difference.

Chapter 115 of the Public Acts of Tennessee 1951, is a general wild life protection act. Under Section 20 of that Act it is provided in part:

"Provided, that no fish listed as game fish may be sold or offered for sale at any time, except that yellow bass (striped jack), crappie, and all varieties of sunfish, but not including black bass, may be taken commercially from Reelfoot Lake, *transported, sold and served in restaurants*". (Italics ours.)

This Public Act, Chapter 115 of the Public Acts of 1951, is codified in Williams' Code as Sections 5178.30-5178.103. The Legislature of 1953, Pub. Acts 1953, c. 256, amended this Act in certain particulars. As far as here

applicable the amendment to Section 20, which is codified as Code Section 5178.49, reads as follows:

"Provided, that no fish listed as game fish may be sold, or offered for sale at any time or place in the State of Tennessee, except that yellow bass (striped jack), crappie, and all varieties of sunfish, but not including black bass, may be taken commercially from Reelfoot Lake (except between April 15 and June 15), *transported, sold and served in restaurants*". (Italics ours.)

By comparison the changes can be seen. The paragraph preceding the Section of the Act above quoted declares what fishes are game fish. Among numerous others are "crappie". In the same paragraph from which the above-quoted language is taken are provisions for the supervision of this taking by the Game and Fish Commission and provisions that certain metal tabs, labels, etc., be put on these fish. There is a proviso making it a misdemeanor for a violation of this Section of the Act. Then follows a paragraph saying that no crappie shall be taken between "April 15 and June 15" and other language providing for seines and the size of the mesh in the seines.

Both sides to this litigation agree on nearly all, if not all, the legal principles involved herein. It is agreed first that the legislative intent controls the construction of statutes. *Chicago & Southern Airlines, Inc., v. Evans,* 192 Tenn. 218, 240 S. W. (2d) 249, and others. It is also agreed that the statute should be construed as a whole, giving effect to each word. *Tiger Creek Bus Line v. Tiger Creek Transportation Ass'n,* 187 Tenn. 654, 216 S. W. (2d) 348; and that we should and will assume that the Legislature used each word in the statute purposely and that the use of these words conveyed some intent

608

and had a meaning and a purpose. *Flowers* v. *Aetna Casualty & Surety Co.,* 186 Tenn. 603, 212 S. W. (2d) 595.

It is further agreed that we in construing a statute should give it the construction which promotes the purpose and object of the Act. *Knoxtenn Theatres, Inc.,* v. *Dance,* 186 Tenn. 114, 125, 208 S. W. (2d) 536; *Woodroof* v. *City of Nashville,* 29 Tenn. App. 426, 435-436, 197 S. W. (2d) 4. One reading this Act immediately arrives at the obvious purpose of the Act which is to conserve game fish. All parties hereto concede that this is the purpose of the Act.

The declarations in the caption of the Act of what the Act is about are definite signposts to tell to the Legislature, and others interested, what the Act is about. It certainly is our duty in trying to determine the intent of the Legislature in enacting an Act to consider the title or declarations in the caption of the Act to determine what the purpose of the Legislature was. *Sealed Power Corp.* v. *Stokes,* 174 Tenn. 493, 502, 127 S. W. (2d) 114. We of course, after considering and reading the caption of the Act, read each section thereof and then by comparing one section with another we get some light on the intent and the general purpose of the Act as enacted by the Legislature. Thus when we look at the caption of Chapter 115 of the Public Acts of 1951, as codified 5178.30 et seq., we see from the caption of this Act that among its other purposes is "* * * to prohibit the sale of game and game fish * * *."

The petitioner here (Director) interprets the heretofore quoted language from the Act as restricting the sale of crappie and certain other species of game fish therein set forth to restaurants. It seems to us that this interpretation is sound and that such a construction will protect and preserve these fish as is contemplated by the

Act because then this would tend to prohibit the sales in abundance. If we take the construction put on this Act by the two lower courts then there is absolutely no restriction on the sale of these fish and consequently if there was no restriction there would be no protection or preservation of such fish.

We think that the courts are entitled to and should review previous legislation on the subject in an effort to somewhat glean the present intent of the Legislature. Sutherland Statutory Construction, 3rd Edition, Horack, Vol. 2, Section 5002, page 483. There have been innumerable private acts on the subject. Probably the Legislature sought to find a solution once and for all when it enacted this comprehensive enactment contained in Chapter 115 of the Public Acts of 1951. By 1953 some imperfections had appeared and consequently the 1953 General Assembly made some amendments to the Act among others was the one hereinbefore referred to now pertinent.

As early as 1907 the sale of fish at Reelfoot Lake for eating purposes, but not for resale, was recognized. Section 13, Chapter 489, Public Acts of 1907. This prohibition against the sale of fish generally has long been recognized, but equally well recognized has been the exception that fish may be sold for eating purposes at Reelfoot Lake.

We come on down to the 1935 Legislature which changed the State's policy concerning the prohibition against commercial fishing. The law was known as the ''Reelfoot Lake Law'' as contained in Chapter 164 of the Public Acts of 1935. This Act was detailed and created a scheme of royalties to be paid the State upon certain quantities of fish taken commercially.

Again the policy was changed by Chapter 218 of the

Public Acts of 1939. In 1941, by Chapters 84 and 127 of the Public Acts of that year, other enactments were offered on this subject. Chapter 127 prohibits the sale or offering for sale of game fish, defines game fish and sets a limit of 60 crappie for commercial fishermen at Reelfoot during the open season. It provided that:

"hotels, restaurants, cafes, or other licensed eating places, and wholesale fish dealers may purchase during the open season and store for resale or serve, legal size crappie, bream * *."

When we contrast this language taken from the 1941 Act with Section 20 of the Act under consideration we readily see that the Legislature by use of the words in the 1941 Act had before them and knew what words could be used when the fish were and could be sold generally and served generally. When we compare this language with the restricted language of the Act under consideration— "transported, sold and served in restaurants" it is obvious that the Legislature certainly did not mean that these fish could be generally sold. Their sale, it seems to us, was restricted.

At this point we interestingly note that Chapter 257 of the Public Acts of 1953—the Chapter immediately following Chapter 256 wherein is contained the language under consideration here, provides for the purchase of game fish including crappie outside of the State and also provides that these fish may be sold to hotels, restaurants, cafes, clubs and other licensed eating places, and sold generally. All of these "eating places may serve crappie, jacks, striped white bass, pike and mountain trout purchased outside the State of Tennessee by said wholesale fish dealers under the provisions of this Act." This Chapter 257 of the Public Acts is codified in Williams' Code, Sections 5178.49A, 5178.49B, 5178.49C. Thus when we

compare the language dealing with the identical subject here under consideration and in the chapter immediately following the chapter wherein the legislation under question was passed we find the Legislature used very comprehensive language about allowing these fish to be purchased from out of the State and how they were sold and how they may be served. To our minds this language of this Chapter enacted at the same session of the Legislature and immediately following the other is a further means of arriving at the intent of the Legislature in enacting the enactment under question wherein they said that these fish might be "transported, sold and served in restaurants". It seems to us that the comparison of the two languages is obvious, so obvious that it clearly is a very glaring signpost as to what the intention of the Legislature was.

◼ Then too, we have another guidepost as an aid to finding what the legislative intent was, that is, that exceptions to general acts are strictly construed. *Powers* v. *Vinsant,* 165 Tenn. 390, 393, 54 S. W. (2d) 938. The reason for a strict construction to an exception to a general act is obviously because the legislative purpose as set forth in the general act expresses what the policy of the act was and only such things as expressed in the act and when you have exceptions to this general policy they should be strictly construed. Clearly the right to sell, to take these fish commercially is an exception to the act—the act generally is to conserve these game fish.

If we adopt the construction of the lower courts, we must wholly omit "and served in restaurants". The language is that they shall be "transported, sold and served in restaurants". It seems to us that there was no earthly reason why the Legislature should enact and put on this language connected as it is—"and served in res-

taurants," without meaning just what it said. We do not find the general language that is used in Chapter 257 of the Acts of 1953 in the controlling Act. Chapter 257 gives the general right to purchase and sell fish bought out of the State, of the kind here under consideration. The Legislature is presumed and we think they did know what they were doing and they expressed this for a purpose. It seems to us that if they intended to allow these fish to be sold generally on the open market that there would have been no earthly reason to use the language as they did in the Act. By previous acts and subsequent acts the Legislature has shown without a doubt that it knew exactly how to express it if it desired to throw these fish on the open market.

The Court of Appeals reasons at some length that the Legislature did not mean to restrict the sale of fish merely to restaurants and ends up with this question:

"Why should a citizen who wants to eat fish be compelled to go to a restaurant rather than prepare and eat the fish at home?"

The enactment of this Act was for the Legislature. It is not up to the courts. As has been said of the court under such a situation—"It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power." *Henley* v. *State,* 98 Tenn. 665, 680, 41 S. W. 352, 354, 1104, 39 L. R. A. 126. This is a question for the Legislature to answer. The question itself presupposes that the only fishermen are commercial fishermen when as a matter of fact there must be quite a large number of the people of the State who are fishermen, to some extent, for pleasure or recreational purposes at least.

■ This case has been indeed interesting to us. It has been exceptionally well briefed and argued and we

have read and reread the Act many times. We have read many authorities, in addition to those cited in the briefs, and have reached the conclusion, for the reasons herein stated, that the intent of the Legislature was to restrict the sale of crappie and the other species of game fish therein mentioned to restaurants. The result is that the judgments of the lower courts are reversed and the costs will be taxed to the original plaintiffs.