KATHERINE CONNELLY RIPPETH et al., Complainants, Appellees, v. JOSEPH DANIEL CONNELLY et al., and STATE OF TENNESSEE, Defendant, Appellants. —447 S.W.2d 380.

Eastern Section.   June 20, 1969.

Certiorari Denied by Supreme Court October 6, 1969.

Frank L. Flynn, Jr., Assistant Attorney General, for Knox County.

Bernard E. Bernstein, Knoxville, Guardian Ad Litem, W. Conway Garlington, Knoxville, for appellees.

McAMIS, P. J. This case involves a construction of the statute of descent, T.C.A. 31-101(2) (c).

The bill was filed for a decree establishing the identity of the heirs, including unknown heirs, of Ellen Loretta Mitchell and for an adjudication of the interest of each in the realty of which she died seized and possessed. The State of Tennessee was made a party defendant to have a decree adjudicating any right it might have or claim to have to one-half the real property of Ellen Loretta Mitchell, under the escheat statute, T.C.A. 31-801.

The facts are not in dispute. Ellen Loretta Mitchell died January 2, 1966, seized and possessed of a tract of land acquired by purchase. She left no surviving issue, no parents and no brothers or sisters or descendants of brothers or sisters.

She left a will making one bequest of $200.00 which has been paid and is unquestioned. The remainder of her estate she devised to Joseph John Sullivan, a nephew, who predeceased her, having died intestate on January 17, 1964, without heirs. Consequently the devise to him failed and as to the realty so devised by Ellen Loretta Mitchell she died intestate.

Both parents of Mrs. Mitchell predeceased her. Her father, Michael D. Sullivan, left no heirs. Her mother, Mary Sullivan, left collateral heirs, who are descedants of Bridget O'Connell Connelly, a sister of Mrs. Mitchell's mother. Her parents had no other children.

There is thus presented the question: Should property that would have passed to Mrs. Mitchell's father had he been living at the time of her death, in default of heirs in the paternal line, pass to existing heirs on the maternal side or should one-half of the property escheat to the State. The Chancellor construed T.C.A. 31-101(2) (c) as passing the entire estate to Mrs. Mitchell's heirs on the maternal side and, consequently, held there was no escheat. From this holding the State has appealed. The question is one of first impression.

T.C.A. 31-110(2) (a), provides in part that where the intestate dies without issue his land shall be inherited by his brothers and sisters "to be divided among them equally" and that, if deceased, the issue of such brothers and sisters "shall represent their deceased parent, and

be entitled to the same part of the estate of the uncle or aunt as their father or mother would have been entitled to if living.''

The next succeeding sub-section, (2) (c), here directly involved, provides that land of an intestate shall descend as follows:

''If both parents be dead, in equal moieties by the heirs of the father and mother in equal degree, or representing those in equal degree of relationship to the intestate, but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood or representing those who are nearest in blood to the intestate, shall take in preference to others more remote.''

It is to be seen the statute fails to provide in express terms for a case where both parents are dead and there are collateral heirs on only one side. Neither does it provide that where this is so all of the estate in land will *not* descend to the heirs of the intestate in cases where all of them may be either on the paternal or maternal side. The Legislature could have provided but did not for an escheat in case there were living collateral heirs on only one side.

We begin our consideration bearing in mind that in the construction of statutes the cardinal rule is to ascertain and give effect to the intent and purpose of the Legislature in relation to the subject matter of the legislation, all rules of construction being but aids to that end. Anderson v. Outland, 210 Tenn. 526, 360 S.W.2d 44; Woodroof v. City of Nashville, 183 Tenn. 483, 192 S.W.2d 1013; McCuiston v. Haggard, 21 Tenn.App. 277, 109 S.W.2d 413.

A corollary of this rule is that in construing a statute the court will look to the underlying legislative purpose and, if possible, avoid a construction that would frustrate that purpose or one that would lead to an absurd result and give the statute a construction which promotes its purpose. Anderson Fish & Oyster Co. v. Olds, 197 Tenn. 604, 277 S.W.2d 344; State v. Dyer, 171 Tenn. 66, 100 S.W.2d 653.

■ Words of a statute, if inconsistent with its clear purpose, must yield to the legislative will as found from a consideration of the whole act. Hilliard v. Park, 212 Tenn. 588, 370 S.W.2d 829.

As early as 1878 the Supreme Court, in an opinion by Mr. Justice Cooper, held the second section of the descent statute intended to provide for every contingency not provided for in Sections 1 and 3. We quote:

"Obviously, the first and third sections were intended for particular contingencies, and the second section for every other supposable case." In re Miller Wills, 70 Tenn. 54.

While the Court in that case did not have for consideration the question here presented we think the quoted language judicially declared the purpose of this Section and, with this construction by the highest court in the State outstanding, the statute has since remained unchanged. It may be of some significance that no case raising the question we have in this case has reached the appellate courts in more than 100 years since the statute was enacted.

To adopt the construction urged by the State we would be compelled to hold, contrary to In re Miller Wills,

supra, that it was not the intention of the Legislature to provide for every contingency and particularly where there are heirs of the intestate in only one of the parental lines.

█ Although in derogation of the common law, statutes of descent and distribution are to be construed in keeping with their general purpose to effectuate a complete and orderly distribution of intestate estates where such purpose can be gleaned from the language of the statute. And where such purpose is clear, as we think it is in the statute presently considered, the court ought not to construe any case to be a casus omissus if, by any reasonable construction, this result can be avoided.

██ █ Escheats, being in the nature of a forfeiture, are not favored, 27 Am.Jur.2d 879, and, bearing in mind the rule that statutes are to be construed as a whole and with the underlying purpose in mind we must hold that all of the estate of the intestate descended to the heirs in the maternal line, with the result that there was no escheat.

Affirmed and remanded generally and particularly for the fixing of any proper fee for the guardian ad litem for services rendered on appeal. All costs will be paid out of the fund in court arising from the sale of the land.

Cooper and Parrott, JJ., concur.