**BOB ARUM ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**TENNESSEE ATHLETIC COMMISSION,**
**et al., Defendants-Appellees.**

Supreme Court of Tennessee.

May 17, 1982.

Francis W. Headman, Knoxville, for plaintiff-appellant.

Joe C. Peel, Asst. Atty. Gen., Nashville, for defendants-appellees; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

This action was brought to recover gross receipts taxes paid under protest.

The plaintiff, Bob Arum, a promoter of boxing bouts, promoted a heavyweight championship fight which was held in Knoxville, Tennessee. Prior to the match, the plaintiff complied with the provisions of paragraph number one of T.C.A., § 62–2805,[1] and paid $500.00 for a permit or license to promote matches within any city in the state. In accordance with paragraph number two of T.C.A., § 62–2805, the plaintiff also paid the sum of $21,105.80, under protest, as the 4% tax on gross receipts from the fight. The plaintiff, however, now asserts that paragraph number one, which states "this license shall be an annual license which shall be in lieu of all other taxes . . .," takes precedence over the language in paragraph number two, which states "the commission shall collect four percent (4%) of the gross receipts of *every* boxing, sparring or wrestling match or exhibition conducted in this state." (Empha-

sis added.) Plaintiff paid the tax under protest and sues to recover it. The trial court denied relief and plaintiff appeals. The issue presented is one of statutory interpretation, specifically, whether the "in lieu of all other taxes" language found in the first paragraph of T.C.A., § 62–2805, is controlling and exempts the plaintiff from payment of the 4% gross receipts tax levied on "every" boxing match, as provided in paragraph number two of T.C.A., § 62–2805.

The legislative history of T.C.A., § 62–2805, can be traced to a 1929 Private Act which applied only to Shelby County. In 1935, the legislature in Chapter 130 of the Public Acts, codified as T.C.A., § 66–105, created the Tennessee Athletic Commission and provided for the granting of licenses. It provided for an annual $25.00 license fee "which shall be in lieu of all other taxes state, county or municipal." In 1955, the legislature amended T.C.A., § 66–105, to add a gross receipts tax of 2%. The legislature, in 1957, raised the gross receipts tax to 4%. In 1977, the licensing provisions were modified to provide for an annual statewide license, as well as, annual city licenses.

The "in lieu of" language has been in the statute since its inception which was prior to the enactment of the gross receipts tax. Tracing the development of the statute, it is clear that the legislature intended to levy this gross receipts tax in spite of the "in lieu of" language. To conclude that the "in lieu of" language would exempt the plaintiff from the gross receipts tax would defeat the legislature's intent; the purpose of the "in lieu of" language was to exempt the licensed promoter from other taxes that may have been imposed by other statutes but not from the gross receipts tax which did not come into the law until 1955. The enactment of the gross receipts tax must be considered to be a *pro tanto* amendment of the "in lieu of" provision.

We must bear in mind the distinction between a tax and a license fee. If an

1. See Appendix.

imposition is primarily for the purpose of raising revenue, it is a "tax"; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a "license" or "fee." *See, Memphis Retail Liquor Dealers' Association, Inc. v. City of Memphis*, Tenn., 547 S.W.2d 244 (1977). In *Memphis Retail Liquor Dealers'*, *supra*, the plaintiffs asserted that they were exempt from the privilege tax because the inspection fee paid purported to be exclusive. The statute stated that the fee "shall be in lieu of all other gross receipt or inspection fees." However, the Court held that acts which created taxes or fees were not contractual in nature and did not limit subsequent legislatures from changing them. In determining the extent of the meaning of "in lieu of all other taxes," the Court in *Memphis Retail Liquor Dealers'*, *supra*, noted that in order for the new tax to be operative, the Court must assume that the legislature meant to repeal the words "in lieu of all other taxes." Therefore, the words "in lieu of all other taxes" should be interpreted to mean "in lieu of all other taxes until the legislature imposes other taxes." *Id.* at 247. Since nothing was repealed by the subsequent legislation, the clause in controversy was treated as mere surplusage and both clauses remained in full force.

We interpret T.C.A., § 62–2805, to provide licensing provisions in paragraph number one and revenue generating provisions in paragraph number two. Paragraph number one is the regulatory provision dealing with the rules and regulations governing the promotion of boxing matches. Licensing is under the control of the Tennessee Athletic Commission and a promoter must pay a $25.00 fee for each city in which he wishes to promote matches or a $500.00 annual license fee which authorizes him to promote matches throughout the state. Paragraph number two of T.C.A., § 62–2805, is a revenue producing provision. It levies a tax on the gross receipts of every boxing match conducted in the state. Since each paragraph is intended to serve a separate purpose and act independently of each other, to adopt the position taken by the plaintiff would defeat the legislature's intent to provide for regulation of boxing matches as well as for the generation of revenue from such matches.

The cardinal rule of construction is to ascertain and give effect to the intention of the legislature. *Marion County Bd. of Commissioners v. Marion County Election Commission*, Tenn., 594 S.W.2d 681 (1980). Such intent is derived from a reading of the statute in its entirety and within its statutory context. *Crown Enterprises, Inc. v. Woods*, Tenn., 557 S.W.2d 491, 493 (1977). The statute should be construed as a whole giving effect to each word, and it must be assumed that the legislature used each word in the statute purposely and the use of the word conveyed some intent and had a meaning and purpose. *Anderson Fish & Oyster Co. v. Olds*, 197 Tenn. 604, 277 S.W.2d 344 (1955). Where different sections of a statute are apparently in conflict, they should be harmonized, if possible, in favor of a construction which will render every word operative. *Parkridge Hospital, Inc. v. Woods*, Tenn., 561 S.W.2d 754 (1978); *Tidwell v. Collins*, Tenn., 522 S.W.2d 674 (1975); *Bible & Godwin Const. Co., Inc. v. Faener Corp.*, Tenn., 504 S.W.2d 370 (1974). The interpretation adopted by the Court gives effect to both paragraphs of T.C.A., § 62–2805.

Furthermore, applying the specific rules of statutory construction pertaining to tax legislation, an exemption provision is strictly construed against the party relying upon such an exemption; an exemption from taxation must positively appear in the statute and will not be implied. *Crown Enterprises, Inc. v. Woods, supra*, and *Hall Contracting Corp. v. Tidwell*, Tenn., 507 S.W.2d 697 (1974). The taxpayer has the burden of making an affirmative showing of his right to an exemption. *Commercial Equities Corp. v. Tollett*, Tenn., 596 S.W.2d 801 (1980). Taxation is the rule, exemption from taxation is the exception. *Woods v. General Oils, Inc.*, Tenn., 558 S.W.2d 433 (1977).

The decision of the Chancery Court is affirmed and this cause is remanded for

appropriate further proceedings consistent with this opinion.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.

## APPENDIX

T.C.A., § 62–2805, was repealed effective June 20, 1980. The repeal, however, was not effective until after the boxing match in question was held. T.C.A., § 62–2805, provides as follows:

"62–2805. *Powers and duties of commission—Issuance of licenses—Fees—Tax records [Repealed effective June 30, 1980].*—The commission created by this chapter shall have and is vested with the sole direction, management, control and jurisdiction over all boxing, sparring and wrestling matches or exhibitions to be conducted, held or given within this state, and no such boxing, sparring or wrestling match or exhibition shall be conducted, held or given within the state except in accordance with the provisions of this chapter. The commission shall have full power and authority and it shall be its duty to promulgate, make and publish such rules and regulations governing in every particular the conduct of the boxing, sparring and wrestling matches and exhibitions in this state. Such rules and regulations may be adopted after a public hearing, written notice of which shall be mailed to all persons who hold or have held a license or permit from the commission within the last twelve (12) months. This notice shall be mailed not less than twenty (20) days prior to the date of the hearing and shall list the time, place, and date of the meeting and state briefly the subjects to be discussed. The commission shall have the power and authority to accept applications for and, in its discretion, to order a license or permit issued as hereinafter provided, to any applicant desiring to promote or conduct a boxing, sparring, or wrestling match or exhibition within any city in the state. Any person having a blanket permit or license good for twelve (12) months shall, at least one (1) week before any boxing, sparring or wrestling match or exhibition to be held, apply to the commission for a specific permit for such event, which application shall be accompanied by payment of a special permit fee of one dollar ($1.00) and which permit shall be promptly issued upon receipt of the application and fee. Such permit or license shall be issued upon payment of twenty-five dollars ($25.00) per city in which the applicant wishes to promote matches, or upon payment of five hundred dollars ($500) for a permit or license to promote matches within any city in the state. This license shall be an annual license which shall be in lieu of all other taxes, state, county or municipal, good for twelve (12) months from the date of issuance, or for a fee of ten dollars ($10.00) for each boxing, sparring or wrestling match or exhibition under authority of this chapter. The commission shall have authority to appoint referees, inspectors, and other officials necessary to conduct properly the boxing, sparring or wrestling matches or exhibitions or other performances herein authorized and shall have the authority to collect a reasonable fee to be fixed by the commission but not to exceed twenty-five dollars ($25.00) for each annual license or permit issued to a boxer, wrestler, referee, judge, matchmaker, promoter, manager, trainer, second, director, or timekeeper.

"The commission shall collect four percent (4%) of the gross receipts of every boxing, sparring or wrestling match or exhibition conducted in this state. However, funds paid to the sponsor of such match or exhibition shall be exempted from the payment of the tax.

"The books and records of the commission and its chairman and secretary shall be public records and shall be open and available to all persons having business with the commission at reasonable intervals and during regular office hours. The commission shall be audited by the state comptroller as provided in § 4–336. The provisions of this chapter shall not apply to amateur boxing matches or exhibitions."

(Effective June 30, 1980, the regulation of boxing exhibitions is governed by T.C.A., § 53–6801–6803, and the applicable tax on boxing or wrestling matches is governed by T.C.A., § 67–5830.)