James CROWE, Darrell White, Harold Orr, and Rayburn Smith, Plaintiffs–Appellants,

v.

Roy W. FERGUSON, Sr. and Joyce Tune; Bedford County Election Commission, Edward Steelman, Kathleen Smith, Mary Ann Brame, Cindy Whitaker, Jesse Baugher, and Anna M. Clanton, Defendants–Appellees.

Supreme Court of Tennessee, at Nashville.

July 29, 1991.

William L. Abernathy, Jr., Shelbyville, for plaintiffs-appellants.

John T. Bobo, Shelbyville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

This appeal arises out of an election contest for two seats on the County Commission of Bedford County. The Plaintiffs–Appellants, all unsuccessful candidates for County Commissioner, have appealed from a decision of the Bedford County Chancery Court upholding the election and the finding that an individual who runs in a primary election for a party nomination to one office and loses, may then be a candidate for a different office in the ensuing general election, provided that there was no primary for that office. The pertinent Defendants–Appellees are Roy W. Ferguson, Sr. and Joyce Tune, unsuccessful candidates

for the offices of Bedford County Executive and Bedford County Clerk, respectively, in the May 1990 primary election, but successful candidates for County Commissioner in the August 1990 general election. The issues in this appeal are (1) whether the trial court was correct in determining that T.C.A. § 2–5–101(f) did not prohibit defendants Ferguson and Tune from appearing as candidates for County Commissioner in the August 1990 election and (2) whether Tune was prohibited from qualifying because, due to reliance on an official opinion, she missed the qualifying deadline. For the reasons set forth below, we affirm the disposition of this case made by the trial court.

The essential facts of this litigation are not in dispute. In the May 1990 primary election, Joyce Tune appeared on the ballot as a Democratic candidate for Bedford County Clerk, and Roy Ferguson, Sr. ran as a Democratic candidate for Bedford County Executive. Both Tune and Ferguson lost their primary races, and thereafter decided to run for a seat on the County Commission. The race for County Commissioners in the August 1990 general election was nonpartisan in that no political party had nominated candidates for the race and, accordingly, candidates Tune and Ferguson appeared on the ballot under the heading "Independents." Both were elected.

The qualifying deadline for the August general election was June 7, 1990. Because there had not been a primary election for the County Commission race, it was only necessary to file a petition by the deadline to qualify for the August general election. Prior to the qualifying deadline, Anna M. Clanton, Bedford County Registrar-at-Large, received an opinion from the State Election Coordinator which stated that under T.C.A. § 2–5–101(f)[1] persons who had been candidates for County Clerk or County Executive in the May 1990 Democratic primary could not qualify as candidates for the August 1990 County Commission election. Before the June 7, 1990 qualifying deadline, Ferguson filed a qualifying petition for the County Commission election, but the Bedford County Election Commission rejected the petition. Joyce Tune did not file a qualifying petition before the deadline because the Bedford County Registrar-at-Large informed her that she could not qualify. The Registrar based her information on the opinion from the State Election Coordinator alluded to above. Tune asked the Registrar several times prior to the deadline whether there had been a change in the law which would permit her to run for County Commissioner, but the answer was always "no."

After the June 7, 1990 qualifying deadline, but before the August general election, the State Election Commission, relying upon two opinions issued by the State Attorney General, reversed their earlier opinion and advised the Bedford County Election Commission that T.C.A. § 2–5–101(f) did not prohibit an unsuccessful candidate in the May primary election from running as a candidate in a different, nonpartisan, race in the August general election. Upon learning of this opinion, Tune immediately filed a qualifying petition for the County Commissioner's race (which

---

1. T.C.A. § 2–5–101(f) provides:

(1) It is unlawful for any person to qualify as a candidate in a primary election with more than one (1) political party in which he seeks the same office.

(2) It is unlawful for any person to qualify as an independent candidate and as a primary candidate for the same office in the same year.

(3) No person defeated in a primary election shall qualify as an independent for the general election.

(4) No candidate in a party primary election may appear on the ballot in a general election as the nominee of a different political party, or as an independent.

(5) No candidate, whether independent or represented by a political party, may be permitted to submit and have accepted by any election commission, more than one qualifying petition, or otherwise qualify and be nominated, or have his name anywhere appear on any ballot for any election or primary, wherein such candidate is attempting to be qualified for and nominated or elected to more than one state office as described in either § 2–13–202(1), (2) or (3) or in Article VI of the Constitution of Tennessee or more than one (1) constitutional county office described in Article VII, § 1 of the Constitution of Tennessee or any other county wide office, voted on by voters during any primary or general election.

was accepted). In the August 1990 general election, Tune was elected as a Commissioner for the Seventh District of Bedford County and Roy Ferguson, Sr. was elected as a Commissioner for the First District.

After the August election, the Plaintiffs, unsuccessful candidates for County Commissioner, brought this action predicated upon T.C.A. § 2–5–101(f) to contest the election of Ferguson and Tune as Bedford County Commissioners. The Plaintiffs argued in the trial court (and take the position on appeal) that the opinions of the State Election Commission and the State Attorney General are in error and that T.C.A. § 2–5–101(f) should be interpreted as prohibiting any person defeated in a primary election from qualifying as an independent in any race in the ensuing general election. Furthermore, Plaintiffs contend that Tune filed her qualifying petition after the deadline had passed and that pursuant to T.C.A. § 2–5–101(g) ("no additional candidates may qualify [after the deadline]") she was prohibited from qualifying. When the matter was tried, the Chancellor ruled that T.C.A. § 2–5–101(f) only prohibits a person defeated in a party primary election from running in the general election for an office for which there had been a primary. Because the County Commissioner's election was a non-partisan race without a primary, the Chancellor found that both Ferguson and Tune were eligible as candidates for County Commissioner, even though they had been defeated in the May 1990 Democratic primary elections for different offices.[2] The Chancellor also held that Tune was properly on the ballot despite having missed the qualifying deadline due to her reliance on representations made by election officials regarding her ineligibility to run in the general election.

■■■■ As stated, the first question in this case is whether T.C.A. § 2–5–101(f) prohibits persons who are unsuccessful candidates in a party primary from subsequently running in a non-partisan general election for a different office. We approach this question mindful that the cardinal rule of Tennessee statutory interpretation is to ascertain and give effect to the intent and purpose of the Legislature in relation to the subject matter of the legislation, all rules of construction being but aids to that end. *Rippeth v. Connelly*, 60 Tenn.App. 430, 447 S.W.2d 380, 381 (1969). A statute must be construed so as to ascertain and give effect to the intent and purpose of the legislation, considering the statute as a whole and giving words their common and ordinary meaning. *Marion Cty. Bd. of Comm'ners v. Marion Cty. Election Comm'n*, 594 S.W.2d 681, 684–85 (Tenn.1980). The Court should assume that the Legislature used each word in the statute purposely and that the use of these words conveyed some intent and had a meaning and purpose. *Anderson Fish & Oyster Company v. Olds*, 197 Tenn. 604, 277 S.W.2d 344, 346 (1955). Furthermore, this Court may review previous legislation on the subject in an effort to learn the present intention of the Legislature. *Id.* 277 S.W.2d at 346.

Tennessee's Election Code, Title 2 of Tennessee Code Annotated, was enacted substantially in its present form in 1972. The purpose of the Election Code was "to restate, supplement, consolidate, clarify, and revise the election laws of this State and other matters related to them in order to establish a uniform law of elections protecting the freedom and purity of elections." Caption to Public Acts, 1972, Chapter No. 740. In 1973, the Legislature enacted the first "Sore Loser" provision, as the present T.C.A. § 2–5–101(f) is often referred to. The pertinent part of the original provision read: "It is unlawful for any person to qualify as an independent candidate and as a primary candidate for the

---

2. The Chancellor opined: "It's been pointed out that [T.C.A. § 2–5–101(f)] is known as the 'sore loser's law' and that was an historical name for it.... I don't think that the Legislature meant to limit a person to one bite of the apple from any other elections that may be held. So I think that interpreting the statute that the Legislature

did not intend that a person could run for more than one office where there had been a primary election if those offices were dealt with in a primary election. But, I don't think that they intended to preclude a person from running for another office where there had been no primary; in this case, the County Commission."

same office in the same year. Neither shall any person defeated in an August primary election qualify as an independent for the same office in the November general election." Public Acts, 1973, Chapter 106, Section 2. The first sentence of this provision is today's T.C.A. § 2-5-101(f)(2).

In 1974, the Legislature altered the original Sore Loser provision by deleting the second sentence and substituting, "Neither shall any person defeated in a primary election qualify as an independent for the general election." Public Acts, 1974, Chapter 731, Section 1. The phrase "for the same office" and references to August and November were deleted. This provision is essentially the same as today's T.C.A. § 2-5-101(f)(3). Clearly, the Legislature, by deleting the phrase "for the same office" intended to expand the scope of the Sore Loser provision. The question, then, is just how far the Legislature intended for this prohibition to reach? In addressing this question, the focus must necessarily be on T.C.A. § 2-5-101(f)(3) ("No person defeated in a primary election shall qualify as an independent for the general election.") and T.C.A. § 2-5-101(f)(4) ("No candidate in a party primary election may appear on the ballot in a general election as the nominee of a different political party, or as an independent.").

The purpose in enacting the Tennessee Election Code was to secure the freedom and purity of elections. T.C.A. § 2-1-102(1). T.C.A. § 2-5-101(f) is obviously concerned with preserving the integrity of the primary process itself as part of the larger public policy aim of promoting stability and trust in the election process as a whole. One of the apparent goals of T.C.A. § 2-5-101(f) is to prevent candidates who start one race from jumping into another race that is already in progress. If a candidate who ran unsuccessfully in a party primary for one office, and then runs in the general election for the same office under a different party name, or for a different office for which a primary was already held, the public may lose faith in the primary process and the party system. Allowing a defeated primary candidate to change political affiliation or to renounce

all political affiliations and enter a race in which his former party has already chosen a candidate undermines the integrity of the primary process. For the primary election system to be an effective method of choosing candidates, the results of those elections must have some meaning.

Furthermore, prohibiting a defeated primary candidate from qualifying as an independent in another race in which a primary has already been held, safeguards the integrity of the election process by not allowing the members of a political party to take advantage of the election process. If a party fields two popular candidates in one race and no viable candidate in another race in the primary election, the candidate who is defeated in the first race may be tempted to disaffiliate himself from his party to run under the guise of an independent for that office in the general election.

These concerns, however, are not raised when, in the general election, a defeated primary candidate enters a non-partisan race for a different office. Under this scenario, the intent and purpose of both the entire Election Code and T.C.A. § 2-5-101(f) itself are satisfied. The integrity of the primary system is preserved because the results of the primary election are preserved. That is, candidates who entered primary races are abiding by the results of the primary election. Candidates have no incentive to change their position or affiliation and the confidence in the primary election remains undisturbed. Accordingly, we hold that T.C.A. § 2-5-101(f)(3) and (4) prohibit an unsuccessful candidate in a party primary from appearing on the ballot in a subsequent partisan general election as an independent candidate or as a candidate of a different political party. Under the statutory interpretation urged by the Plaintiffs, the election process, as well as an individual's right to participate as a candidate, would be unduly restricted if an unsuccessful candidate in a party primary was not allowed to qualify as a candidate in a non-partisan general election for a different office. Our conclusion in this regard is consistent with the express intent of the

Election Code to secure the "freedom and purity of the ballot." T.C.A. § 2–1–102(1).

The entry of Ferguson and Tune into the County Commissioner's race did not compromise the integrity of the primary election for either County Executive or County Clerk, nor did it spoil the purity of the race for County Commissioner. The Democratic candidates for County Executive and County Clerk were chosen in the May 1990 primary. Both Ferguson and Tune then entered the non-partisan commissioner's race without the support of any political party and without any political affiliation, as did all the other candidates seeking a seat on the County Commission. Neither Ferguson nor Tune had switched their political affiliation in order to qualify for the race, and both ran for a different position. The intent of T.C.A. § 2–5–101(f) has been satisfied.

■ We now turn to the question of whether Tune should be prohibited from qualifying for the County Commissioner's race because she filed her qualifying petition after the deadline had passed. T.C.A. § 2–5–101(g) provides that after the qualifying deadline no additional candidates may qualify. In *Koella v. State*, 218 Tenn. 629, 405 S.W.2d 184 (1966), however, this Court opined that if it appeared on record, by proper pleading and proof, that the candidate was justifiably misled as to the proper calculation of time to file his petition, we would not hesitate to excuse him from literal compliance with the otherwise mandatory statute. 405 S.W.2d at 190. While Tune was not misled regarding the proper time in which to file her qualifying petition, she was misled as to whether she could file at all by the Bedford County Registrar-at-Large who was following the opinion of the State Election Coordinator regarding T.C.A. § 2–5–101(f) and the election in progress was not unduly disrupted. We are persuaded that if a candidate misses a qualifying deadline due to her reasonable and justifiable reliance upon an official opinion, relief from the mandatory deadline is appropriate, provided filing takes place with all reasonable dispatch after it is discovered the opinion is incorrect. There is no doubt that Tune reasonably and justifiably relied upon an official opinion regarding her ineligibility to run for County Commissioner and she immediately filed her qualifying petition upon learning that the Election Commission had reversed their earlier position.

In summary, we hold that the entry of Ferguson and Tune into the Bedford County Commissioner's election did not undermine the integrity of the Bedford County primary election process. Ferguson and Tune did not attempt to circumvent the primary system, precisely what T.C.A. § 2–5–101(f) is designed to prevent. The race they entered was non-partisan and was for a different office. Finally, Tune should not be held to the strict filing restriction of T.C.A. § 2–5–101(g) in view of the fact that she reasonably and justifiably relied upon an official opinion that she could not run in the first place. For the foregoing reasons, the judgment of the trial court is affirmed and the case remanded for any further action that may be necessary. Costs of this appeal are taxed against the Appellants.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.