IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE
(HEARD AT MORRISTOWN)

FILED

October 6, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| | ) | FILED:  OCTOBER 6, 1997 |
| Appellant | ) | |
| | ) | SULLIVAN COUNTY |
| v. | ) | |
| | ) | HON. R. JERRY BECK, |
| | ) |    JUDGE |
| BETTY D. LEVANDOWSKI | ) | |
| | ) | NO. 03-S-01-9611-CR-000116 |
| Appellee | ) | |

For Appellant:<u>                     </u>    For Appellee:

KENNETH F. IRVINE, JR.        JOHN KNOX WALKUP
Knoxville, TN               Attorney General and Reporter

                                      MICHAEL E. MOORE
                                        Solicitor General

                                        ELIZABETH T. RYAN
                                        Assistant Attorney General
                                        Nashville, TN

                                        H. GREELEY WELLS, JR.
                                        District Attorney General

                                        NANCY STALLARD HARR
                                        BARRY P. STAUBUS
                                        Assistant District Attorneys
                                         General
                                        Blountville, TN

OPINION

AFFIRMED                                              BIRCH, J.
          In this appeal,[1] we must determine whether a false
response from an individual to an inquiry made by a law enforcement
officer constitutes a false report within the meaning of Tenn. Code
Ann. § 39-16-502(a)(1) (1991).  After careful review, we hold that
§ 39-16-502(a)(1) applies to statements volunteered or initiated by
an individual but does not apply to statements made in response to
inquiries by law enforcement officers.  Accordingly, the judgment
of the Court of Criminal Appeals is affirmed.


          Betty Levandowski, the defendant, was convicted of
aggravated child abuse and making a false report.  On appeal,
Levandowski argued that the false report statute was "overly broad
and vague."  The intermediate court affirmed the conviction for
aggravated child abuse and reversed the conviction for making a
false report.  We granted the State's application for permission to
appeal and limited the grant to the "false report" issue.


                                I


          On May 19, 1994, an officer with the Kingsport Police
Department went to Levandowski's home to investigate a report of

---

[1]Oral argument was heard in this case on May 7, 1997, in
Morristown, Hamblen County, Tennessee, as part of this Court's
S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal Education for **S**tudents)
project.

suspected child abuse.  Upon arrival, the officer spoke with Levandowski and asked to see the child.  Levandowski responded that she had put the boy on a bus to Chicago and if the officer did not believe her, he could look around.  Later, however, the child was found in a neighboring residence.  Levandowski was subsequently indicted for and convicted of a violation of Tenn. Code Ann. § 39-16-502(a)(1) for her false response to the officer's question as to the child's whereabouts.

II

The construction of a statute is a question of law, and thus, our review is de novo.  Roseman v. Roseman, 890 S.W.2d 27, 29 (Tenn. 1994); The Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993); Comdata Network, Inc. v. Tennessee Dept. of Revenue, 852 S.W.2d 223 (Tenn. 1993).

A statute must be construed so as to ascertain and give effect to the intent and purpose of the legislation considering the statute as a whole and giving words their common and ordinary meaning.  Crowe v. Ferguson, 814 S.W.2d 721, 723 (Tenn. 1991); Marion Cty. Bd. of Comm'rs v. Marion Cty. Election Comm'n, 594 S.W.2d 681, 684-85 (Tenn. 1980).  The Court should assume that the legislature used each word in the statute purposely and that the use of these words conveyed some intent.  Crowe, 814 S.W.2d at 723; Anderson Fish & Oyster Co. v. Olds, 197 Tenn. 604, 277 S.W.2d 344, 346 (1955).  Furthermore, this Court may review previous legislation on the subject in an effort to learn the present

3

intention of the legislature.  Id.  In construing statutes, courts must presume that the legislature has knowledge of its prior enactments and knows the state of the law at the time it passes legislation.  Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

Finally, penal statutes are construed strictly and against the State.  State v. Bobo, 727 S.W.2d 945, 952 (Tenn. 1987).  As a general rule of statutory construction, any ambiguity in a criminal statute is construed in favor of the defendant.  State v. Blouvett, 904 S.W.2d 111, 113 (Tenn. 1995)(citing Key v. State, 563 S.W.2d 184, 188 (Tenn. 1978)).

With these caveats in mind, we turn to the statute at issue.  Tennessee Code Annotated § 39-16-502(a) provides in pertinent part:

> It is unlawful for any person to:
>
> (1) Report to a law enforcement officer an offense or incident within the officer's concern:
>
> . . . .
>
> (C) Knowing the information relating to the offense is false . . .

At the outset, we note that the previous version of this statute was worded more broadly:

> (a) A person commits the offense of false reporting to authorities if he:
>
> . . . .

> (3) Makes a report, purposely causes
> the transmission of a report or
> <u>furnishes information</u> to law
> enforcement authorities concerning a
> crime or other incident within their
> official concern if he knows that he
> has no such information relating to
> such crime or incident or he knows
> that the information is false
> . . . .

Tenn. Code Ann. § 39-5-524 (1983)(emphasis added). Thus, it is reasonable to conclude that in amending the statute, the legislature intended to narrow the situations in which it applies.

We have also carefully reviewed the legislature's use of the term "report" in other sections of the criminal code. The legislature has consistently used the term "report" in contexts where the individual initiates the provision of the information, not in contexts where an individual is responding to an inquiry. <u>See</u> Tenn. Code Ann. § 39-13-525(b)(Supp. 1996)("the district attorney general shall conduct a criminal history check . . . . [and] <u>report</u> the results of such criminal history check to the court . . . ."); § 39-14-209 (1991)(upon receiving information that a horse is footsore, the manager of the horse show "<u>shall report</u> the same in writing to the district attorney general . . . ."); §§ 39-14-902(2)(C)(i) & -903(c)(2)(A)(Supp. 1996)(money laundering statute does not apply to suspicious transactions "<u>whether reportable</u> or not under any state or federal currency transaction <u>reporting</u> or recording requirements, <u>where: [s]uch person or corporation reports such suspicious transaction</u> . . . ."); § 39-14-909 (Supp. 1996)("<u>[t]he reporting</u> of a financial transaction by a corporation or other business entity to a regulator shall not

5

create a cause of action . . . ."); § 39-15-203 (1991)(a doctor performing an abortion "<u>shall make a report</u> to the commissioner of health . . . ."); § 39-16-606 (1991)(whenever a person escapes from custody, the appropriate warden "<u>shall immediately report</u> the escape . . . ."); § 39-17-1312 (Supp. 1996)("It is an offense if the parent . . . knows that such minor is in illegal possession of a firearm . . . [and] <u>fails to report it to the appropriate school or law enforcement officials</u>."). In contrast, the perjury statute uses the phrase "make a false statement," which is obviously intended to include responsive statements. <u>See</u> Tenn. Code Ann. § 39-16-701 <u>et seq.</u> (1991). Thus, while "report" can, according to some of its dictionary definitions, be used in the context of a response to a question, the legislature has not utilized the term in this manner. Arguably, the statute is ambiguous. We believe the better course is to construe "report" as used in Tenn. Code Ann. § 39-16-502 consistent with its use in the other sections of the criminal code. As a criminal statute, § 39-16-502 is also subject to strict construction in favor of the defendant.

We also note that the legislature defined the term "statement" in the subsection immediately preceding the subsection at issue here. Had the legislature intended § 39-16-502 to apply to responsive statements, the obvious term to use would have been "statement." The court in <u>People v. Smith</u>, 281 P.2d 103 131 Cal. App.2d Supp. 889(Cal. App. Dep't Super. Ct. 1955) reached a similar conclusion:

> we have concluded that if it had
> been the intent of the City Council
> to proscribe conduct such as that

6

> disclosed by the evidence here, it would have used language substantially different from that which it did. It seems reasonable that in such circumstances it would have provided that it should be unlawful for any person to willfully make a false statement to a police officer for the purpose stated-- rather than using the word "report," which in its context, at least, seems to connote a statement written or oral made upon the initiative of one who resorts to the police department or a member thereof for the specific purpose of having some action taken with respect thereto rather than by way of response to questions by an officer . . . .

Id. at 104.

We hold today that "report" as used in Tenn. Code Ann. § 39-16-502 applies to a written or oral statement initiated by a person. In this context, "report" does not apply to a person's response to an inquiry by a law enforcement officer.

It results that the judgment of the Court of Criminal Appeals is affirmed. Costs are taxed to the State, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Reid, J.

DISSENT:
Drowota, Holder, JJ.

7

**FILED**

**October 6, 1997**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | **FOR PUBLICATION** |
| | ) | |
| Appellant, | ) | Sullivan County |
| | ) | |
| v. | ) | Hon. R. Jerry Beck, |
| | ) | Judge |
| BETTY D. LEVANDOWSKI, | ) | |
| | ) | No.    03S01-9611-CR- |
| 00116 | | |
| Appellee | ) | |

## DISSENTING OPINION

I dissent from the majority decision interpreting Tenn. Code Ann § 39-16-502(a)(1) (1991 Repl.) as applying only to false statements initiated by an individual to the exclusion of false statements given in response to inquiries by law enforcement officials.  For the reasons explained below, the majority's interpretation is contrary to the plain language of the statute. Therefore, I would reverse the Court of Criminal Appeals' decision and affirm the defendant's conviction for making a false report.

## STATUTORY INTERPRETATION

The most basic principle of statutory construction is to ascertain and give effect to legislative intent. <u>Owens v. State</u>, 908 S.W.2d 923, 926 (Tenn. 1995). Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would <u>limit</u> or extend the meaning of the language. <u>Carson Creek Vacation Resorts, Inc. v. State, Dept. of Revenue</u>, 865 S.W.2d 1, 2 (Tenn. 1993) (emphasis added). Courts must presume that the General Assembly intended that every word used in a statute would have a purpose and convey a meaning. <u>Cohen v. Cohen</u>, 937 S.W.2d 823, 827 (Tenn. 1996). The presence of words of limitation in one part of a statute indicates that the absence of such words from other parts of the same statute is an intentional legislative choice. <u>State v. Harkins</u>, 811 S.W.2d 79, 82 (Tenn. 1992). If the legislative intent is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or constructions, and courts are not at liberty, on consideration of policy or hardship to depart from the words of the statute. <u>Carson Creek Vacation Resorts, Inc.</u>, 865 S.W.2d at 2. Where the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, "to say sic lex scripta, and obey it." <u>Id</u>., quoting <u>Miller v. Childress</u>, 21 Tenn. (2 Hum.) 319, 321-22 (1841).

The language contained within the four corners of Tenn. Code Ann. § 39-16-502 (a) is not ambiguous. The statute provides as follows:

(a) It is unlawful for any person to:

(1) **Report** to a law enforcement officer an offense or incident within the officer's concern:

(A) Knowing the offense or incident did not occur;

(B) Knowing the person reporting has no information relating to the offense or incident; or

(C) Knowing the information relating to the offense is false; **or**

(2) **Intentionally initiate or circulate** a report of a past, present, or impending bombing, fire or other emergency, knowing that the report is false or baseless and knowing:

(A) It will cause action of any sort by an official or volunteer agency organized to deal with those emergencies;

(B) It will place a person in fear of imminent serious bodily injury; or

(C) It will prevent or interrupt the occupation of any building, place of assembly, form of conveyance, or any other place to which the public has access.

(Emphasis added.) The natural and ordinary meaning of the word "report," includes statements given in response to inquiries by law

-10-

enforcement officials. To "report" simply means "[t]o give an account of, to relate, to tell, to convey or disseminate information." Black's Law Dictionary, 1300 (6th ed. 1990). The majority's interpretation is an unwarranted limitation of the meaning of the language of the statute, in contravention of this Court's duty.

Where the language of a statute is free from ambiguity, resort to extrinsic aids to determine legislative intent is not appropriate. Roseman v. Roseman, 890 S.W.2d 27, 29 (Tenn. 1994); Carson Creek Vacation Resorts, Inc., 865 S.W.2d at 2. Because the language of the statute at issue in this case is clear, the majority's reliance upon extrinsic aids to determine legislative intent is inappropriate and unnecessary. However, even if statutory language is ambiguous, when discerning legislative intent it is only appropriate to consider statutes "in pari materia"-- those relating to the same subject or having a common purpose. Owens, 908 S.W.2d at 926. In this case, the majority relies upon the definition of the term "report" in other unrelated statutes to support its interpretation. Conspicuously absent from the majority decision is a discussion of the other words used in the remainder of the statute at issue which expressly limit application of Tenn. Code Ann. § 39-16-502(a)(2) (1991 Repl.) to false reports "intentionally initiate[d] or circulate[d]" by individuals. It is clear that, had the General Assembly intended to limit application of Tenn. Code Ann. § 39-16-502(a)(1) to

declarant-initiated false reports, appropriate language was available to do so. Therefore, the absence of an express limitation from subsection (a)(1) militates against the interpretation adopted by the majority and indicates that the General Assembly deliberately chose to give that subsection a broad application. Harkins, 811 S.W.2d at 82.

Finally, the important element to consider in determining whether a false report has been made is whether the person gave the report knowing (A) the offense or incident did not occur; (B) the person reporting has no information relating to the offense or incident; or (C) the information relating to the offense is false. Tenn. Code Ann. § 39-16-502 (a)(1) (1991 Repl.). By focusing upon the party initiating the contact during which the false statement is given, the majority exalts form over substance. See State v. Fenster, 199 A.2d 177 (Conn. Cir. Ct. 1962) (so characterizing the definition of "report" adopted in People v. Smith, 281 P.2d 103 (Cal. App. Dep't Super. Ct. 1955), upon which the majority in this case rely.)

I would hold, as Judge Jerry Smith held in his dissent in the Court of Criminal Appeals, that "report," as used in Tenn. Code Ann. § 39-16-502 (1991 Repl.), includes statements given in response to inquiries by law enforcement officials. Therefore, I would reverse the Court of Criminal Appeals' decision and affirm the defendant's conviction

of making a false report.  I respectfully dissent from the majority's decision.

I am authorized to state that Justice Holder concurs in this Dissenting Opinion.


_____

Frank F. Drowota, III,
Justice