# IN THE COURT OF APPEALS FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

## Fredric Blumberg v. Tennessee Department of Human Services

**Direct Appeal from the Chancery Court for Sumner County**
No. 99C-84  Tom E. Gray, Chancellor

_____

No. M2000-00237-COA-R3-CV - Filed October 25, 2000
_____

Frederic Blumberg ("Blumberg") filed a petition against his wife in the Sumner County Circuit Court, seeking all his wife's marital assets and an increase in his minimum monthly maintenance needs allowance.  On September 16, 1998, the Sumner County Circuit Court issued an Order requiring Mrs. Blumberg to pay as support for the benefit of Mr. Blumberg, all of her monthly income.  Subsequently, Blumberg applied for Medicaid benefits on behalf of Mrs. Blumberg, administered by the Tennessee Department of Human Services ("DHS"), for which he was approved.  On October 26, 1998, Blumberg received notice from DHS that his request for an income allocation was denied.  Thereafter, Blumberg requested an administrative hearing appealing the denial of spousal allocations.  On December 8, 1998, an administrative hearing with DHS was held, and Blumberg's appeal was denied.  The Chancery Court affirmed the decision of the DHS, finding that the support order was not validly adjudicated because of lack of notice to DHS.  This appeal followed.

**Tenn.R.App.P.3 Appeal as of Right; Judgment of the Sumner County Chancery Court Reversed**

ASH, Special Judge Don R., delivered the opinion of the court, in which Judge CRAWFORD and Judge FARMER, joined.

Timothy L. Takacs, Hendersonville, Tennessee, for the appellant, Frederic Blumberg.

Pamela A. Hayden-Wood, Nashville, Tennessee, for the appellee, Tennessee Department of Human Services.

### OPINION

I.

Fredric Blumberg's wife is a resident of a nursing home in Sumner County.  On August 27, 1998 Blumberg filed a petition against his wife in the Sumner County Circuit Court, seeking a transfer of her marital property and an increase in his minimum monthly

maintenance needs allowance ("MMMNA"). The Court ordered Mrs. Blumberg to pay all of her monthly income to Mr. Blumberg as community spouse allowance. This amounted to $405 a month in Social Security benefits. Additionally, the Court ordered that the community spouse monthly income allowance not be included in the patient liability computation. Unfortunately, DHS was not given notice of the filing of the complaint by Blumberg.

On September 14, 1998 Blumberg filed a Medicaid application on behalf of Mrs. Blumberg. She was approved for the Medicaid benefits by DHS. However, Blumberg's request for increased income allocation was denied. Further, DHS ruled that Mrs. Blumberg's monthly income was to be applied to her "patient liability" instead of Blumberg's court ordered income allowance. DHS effectively failed to recognize the Circuit Court Order. Thereafter, Mrs. Blumberg filed an appeal of this decision requesting a hearing. Subsequently, a hearing with DHS was held, and Mrs. Blumberg's appeal was denied. The initial Order was issued February 9, 1999. A final Order was issued upholding the preliminary order of the Hearing Officer on February 22, 1999.

Blumberg filed a Petition for Review in Sumner County Chancery Court. On January 4, 2000, the Chancery Court affirmed DHS' decision. The Court found that Blumberg misrepresented Medicaid provisions in Circuit Court when he claimed that the allocation of Mrs. Blumberg's entire monthly income would not affect her eligibility for benefits. Furthermore, the Court found that the Circuit Court's order of spousal support was not validly adjudicated because DHS had not received notice of the proceedings, thus precluding them from an opportunity to be heard. This appeal followed.

II.

The issues before the Court is whether DHS should be required to follow the Order of the Sumner County Circuit Court and whether DHS and the Chancery Court exceeded its jurisdiction by reversing the Order of the Circuit Court. Under the Uniform Administrative Procedures Act, a final decision of a state agency may be reversed or modified if the plaintiff's rights have been prejudiced because the administrative findings and conclusions are: (1) in violation of a statute or constitution, (2) in excess of the agency's statutory authority, (3) made upon an unlawful procedure, (4) arbitrary or capricious or characterized by an abuse or clearly unwarranted exercise of discretion, or (5) unsupported by substantial and material evidence. **See** Tenn. Code Ann. § 4-5-322(h). The trial court and the agency's construction of a statute involves a question of law. Therefore, our review is subject to *de novo* review. **Beare Co. v. Tennessee Department of Revenue**, 858 S.W.2d 906 (Tenn. 1993).

III.

This is purely a matter of statutory construction. In order to make a statutory construction determination, we must first look at the language of the statute and apply its ordinary and plain meaning. **Eg., Riggs v. Burgon**, 941 S.W.2d 44, 54 (Tenn. 1997). If the intent can be determined from the plain language of the statute, the court's inquiry

2

stops there.  **Storey v. Bradford Furniture Co.**, 910 S.W.2d 857 (Tenn. 1995). However, when the plain language of the statute does not provide a clear interpretation, courts generally look at the legislature's intent to ascertain a statute's meaning.  **Owens v. State**, 908 S.W.2d 923, 926 (Tenn. 1995); **Locust v. State**, 912 S.W.2d 716, 718 (Tenn.Ct.App. 1995).   "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." **Browder v. Morris**, 975 S.W.2d 308, 311 (Tenn. 1998).

With these principles in mind, we next consider the statute that is the focus of this appeal.  We begin our analysis of this issue with a brief historical overview of the Medicare Catastrophic Coverage Act of 1988 (The Act).  The Act, amended from the original Medicaid Act is the central statute presented before this Court.  This new section 1942 to the Social Security Act was codified at Title 42, § 1396r-5(d) of the United States Code, entitled "Protecting income for community spouse."  A community spouse as defined by 42 U.S.C. § 1396r-5(h)(2) means the spouse of an institutionalized spouse. The Act establishes a minimum spousal monthly needs allowance for community spouses.  42 U.S.C. § 1396r-5(d)(3)(A)(i), (B)(iii).  Each state participating in Medicaid program implements the State Plan through a "Single State agency," promulgating its own rules and procedures for operation of the Plan.  42 U.S.C. § 1396a(a)(5). Accordingly, the agency in Tennessee that administers Medicaid is DHS.

If a community spouse seeks an increase in spousal income allowance (MMMNA), the Act sets out two different and independent avenues of procedure that can be followed in setting the increase.  The procedures are found in 42 U.S.C. § 1396r-5(d)(5) and 42 U.S.C. § 1396r-5(e).  42 U.S.C. § 1396r-5(e)(2) gives the community spouse a chance to demonstrate a need for more income than the allowance that would have otherwise been calculated under 42 U.S.C. § 1396r-5(d).  This is accomplished through an administrative Medicaid fair hearing.

Additionally, 42 U.S.C. § 1396r-5(d)(5) gives the community spouse a judicial option for court ordered support.  The statute provides, in subsection (d)(5), as follows: "If a court has entered an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall not be less than the amount of the monthly income so ordered." Thus, the crux of the litigation in the case hinges on whether these two provisions are absolute alternative methods.

In the instant case, Blumberg elected to go the judicial route by obtaining a court order from Sumner County Circuit Court setting the amount of support owed by Mrs. Blumberg to her community spouse, Mr. Blumberg.  This route is within the ambit of the statute.

Conversely, DHS maintained the Chancery Court was correct in it's holding of their administrative decision that the support order was improperly adjudicated because of Blumberg's failure to provide them with notice.  This Court is not persuaded by the DHS' argument. We are of the opinion that the statute itself does not preclude either side

from making the choice they prefer. "The court should assume that the legislature used each word in the statute purposely and that the use of these words conveyed some intent and had a meaning and a purpose." **Anderson Fish & Oyster Company v. Olds**, 277 S.W.2d 344, 346 (1955); **Chadwell v. Knox County Tennessee**, 980 S.W.2d 378, 382.

Although a single standard would be ideal to facilitate this process, absence an action by the legislature stating the contrary we can only interpret their intent. We take the position that the legislature in enacting the Act "used each word purposely and the use of these words conveyed some intent." **Id.** Moreover, had the legislature intended a different interpretation, it could simply have stated in precise language that the administrative process is the only procedure available. However, the legislature did not do this. Consequently, they provided two absolute alternative methods of setting a spouse's allowance and we are bound to recognize both procedures. Thus, DHS was without the authority to ignore the Circuit Court Order of spousal support.

## IV.

Another interesting notion pertaining to this litigation is the issue of notice. The present state of the Act does not require spouses to give notice in actions of this nature. The trial court did not reach the issue presented to this Court but instead held that DHS did not receive notice of Blumberg's application to the Circuit Court. The Chancery Court found that the Circuit Court's Order was not binding because of a lack of notice, therefore, the proceeding was not "properly adjudicated." Although it would be good policy to give notice and DHS would prefer such a rule, no authority exists stating notice as a requirement. It would not be proper in this case to hold Blumberg responsible for a rule of law that does not exist. In fact, the initial action at the Circuit Court level was between Mr. Blumberg and Mrs. Blumberg. Once DHS received notice that they had in fact gone over the MMMNA, they could have filed a motion to set aside the Circuit Court Order and allow them to intervene.

Relief from an order may be granted to a party for reasons including the following set forth under Rule 60.02: "(1) mistake, inadvertence, surprise or excusable neglect; (2) fraud, misrepresentation, or other misconduct of an adverse party; … or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." Here, DHS failed to seek Rule 60.02 relief when it was well within their reach.

## V.

We conclude that notice was not an issue because there is no authority requiring Blumberg to provide notice to DHS of his action in the Circuit Court of Sumner County. Additionally, the Medicare Catastrophic Coverage Act of 1988 provides absolute alternative methods of procedure. Furthermore, it is obvious the Blumberg's rights have been prejudiced because DHS' administrative findings were: (1) in violation of the Act; (2) in excess of their statutory authority; and (3) made upon unlawful procedure when

4

they essentially used an administrative hearing and Chancery Court to act as an appellate court with regard to a Circuit Court ruling.  See T.C.A § 4-5-322(h).

The judgment of the Chancery Court is reversed and remanded back to the trial court for such further proceedings as may be necessary consistent with this opinion. Costs of this appeal are assessed against the Department of Human Services.

_____
Judge Don R. Ash