# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 26, 2013

## JOSEPH H. JOHNSTON v. DAVIDSON COUNTY ELECTION COMMISSION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 111131II     Carol L. McCoy, Judge**

---

**No. M2011-02740-COA-R3-CV - Filed March 26, 2014**

---

Write-in candidate for election to the Council of the Metropolitan Government of Nashville and Davidson County appeals the dismissal of his challenge on constitutional grounds to the statute requiring that, fifty days before an election, write-in candidates for offices in the election submit a notice to the county election commission requesting that their votes be counted. Determining that the statute is constitutional as written and as applied, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and FRANK G. CLEMENT, J., joined.

John B. Carlson, Nashville, Tennessee, for the appellant, Joseph H. Johnston.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Janet M. Kleinfelter, Deputy Attorney General, for the appellee, Davidson County Election Commission, Albert Tieche, Administrator of Elections (individually), and the State of Tennessee.

## OPINION

Plaintiff, Joseph Johnston, a registered voter in Nashville, voted for himself as a write-in candidate for representative of the 18th councilmanic district in the August 4, 2011 election. On August 8 he wrote to Albert Tieche, the Davidson County Administrator of Elections, requesting "written confirmation of the Election Result for District 18 and whether or not write-in votes for me were officially counted as part of this election result." On

August 26, Lionel Barrett, Mr. Tieche's Senior Advisor, advised Mr. Johnston that there were a total of six write-in votes cast in the election for District 18 councilperson and that Mr. Johnston received one of those votes. Mr. Barrett also advised that none of the write-in votes were officially counted because none of the write-in candidates had submitted a notice to the county election commission pursuant to Tenn. Code Ann. § 2-7-133(i) requesting that their votes be counted.

On August 17, 2011 Mr. Johnston filed suit against the Davidson County Election Commission, Mr. Tieche, and Tennessee Attorney General Robert Cooper, challenging the constitutionality of Tenn. Code Ann. § 2-7-133(i); he alleged that the statute violated the Due Process Clause of the 14th Amendment to the United States Constitution and Article IV, § 1 and Article I, § 8 of the Tennessee Constitution. Mr. Johnston sought a declaratory judgment that the 50 day notice requirement was an unconstitutional infringement on the right to vote and the right of a write-in candidate to have such votes counted as part of the election results. The complaint further alleged that the statute operated as a constructive fraud on voters who may have voted for write-in candidates without knowing whether or not the candidate had complied with the statute and, accordingly, that their votes would be counted.[1]

Defendants filed a Tenn. R. Civ. P. 12.02 motion to dismiss the action for lack of subject matter jurisdiction and failure to state a claim for relief, to which Mr. Johnston responded; the court granted the motion. Mr. Johnston moved the court to amend the order of dismissal; he contended that the motion to dismiss did not address his claim that Tenn. Code Ann. § 2-7-133(i) was unconstitutional as applied and, consequently, the order should be amended to reflect that the "as applied" challenge survived. The court denied the motion.

Mr. Johnston appeals, raising the following issues:

1. Whether the trial court erred in dismissing as a matter of law Mr. Johnston's claim that TCA § 2-7-133(i) on its face violated his right to substantive due process and right to vote under the Tennessee Constitution.
2. Whether the trial court erred in dismissing as a matter of law Mr. Johnston's claim that TCA § 2-7-133(i), as applied under the facts of this case,

---

[1] On August 22, Mr. Johnston filed an Amended Complaint to change the designations of Burkley Allen and David Glasgow, who had been identified as "Defendants" in the original Complaint, to "Candidates." On September 20, Mr. Johnston sought leave to file a Second Amended Complaint "to specify that Defendant, Albert Tieche, . . . is being sued individually for purposes of Plaintiff's Section 1983 claim for declaratory judgment and nominal damages arising out of the deprivation of Plaintiff's civil rights under color of law and constructive fraud." The court denied the motion to amend by order entered October 21; the denial of the motion is not an issue on appeal.

constituted a constructive fraud and violated his rights to procedural due process, to substantive due process and to vote under the Tennessee Constitution.[2]

## DISCUSSION

### A. STANDARDS OF REVIEW

At the outset we must determine the appropriate standard to apply when weighing a challenge to a statute alleged to adversely affect the right to vote under the Tennessee Constitution.[3] Mr. Johnston contends that the Tennessee Constitution "affords greater protection to a Tennessee citizen's right to vote than the federal constitution" and that, as a consequence, "an analysis of whether TCA § 2-7-133(i) violates Mr. Johnston's right to substantive due process requires the application of a strict scrutiny test rather than a rational basis test." Defendants contend that the Tennessee Constitution does not provide greater protection with respect to the right to vote; they argue that the more flexible standard which was articulated in *Anderson v. Celebreeze*, a challenge to the constitutionality of Ohio's early filing deadline for independent candidates under the 1st and 14th Amendments to the United States Constitution,[4] and later applied in *Burdick v. Takushi*, in which a voter made a

---

[2] Mr. Johnston does not raise an issue on appeal that Tenn. Code Ann. § 2-7-133(i) violates the Fourteenth Amendment to the United States Constitution.

[3] As noted previously, Mr. Johnston's amended complaint asserted that Tenn. Code Ann. § 2-7-133(i) violated Article IV, § 1 and Article I, § 8 of the Tennessee Constitution; he did not specifically plead a violation of Article I, § 5 and the trial court did not render a ruling in that regard. Defendants do not raise this as an issue on appeal and, in fact, address Mr. Johnston's Article I, § 5 argument in their brief. Accordingly, we shall address the Article I, § 5 claim as well.

[4] The *Anderson* court stated:

Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. The results of this evaluation will not be

(continued...)

challenge under the First and Fourteenth Amendments to Hawaii's prohibition on write-in voting, should guide our consideration of § 2-7-133(i).[5]

In *City of Memphis v. Hargett*, in which the plaintiffs asserted that the requirement at Tenn. Code Ann. § 2-7-112(a)(1)(B) that a voter produce photographic evidence of identification when voting violated Article I, § 5 of the Tennessee Constitution, this court stated:

> There can be no doubt that the right to vote is a fundamental right under the Tennessee Constitution. *Bemis Pentecostal Church v. State,* 731 S.W.2d 897, 901 (Tenn. 1987). A burden on a fundamental right, under Tennessee jurisprudence, must be subjected to strict scrutiny. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1, 15 (Tenn. 2000). Consequently, any burden placed on that right "must be justified by a compelling State interest." *State v. Smoky Mountain Secrets*, *Inc.*, 937 S.W.2d 905, 910 (Tenn. 1996). "The least intrusive means must be utilized by the State to achieve its goals and the means chosen must bear a substantial relation to the interest

---

[4](...continued)
automatic; as we have recognized, there is "no substitute for the hard judgments that must be made."

*Anderson v. Celebrezze*, 460 U.S. 780, 789–90 (1983) (internal citations and footnote omitted).

[5] The *Burdick* court articulated the standard it applied as follows:

A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. We apply this standard in considering petitioner's standard to Hawaii's ban on write-in ballots.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal citations omitted).

being served by the statute in question." *Bemis Pentecostal Church*, 731 S.W.2d at 903.

*City of Memphis v. Hargett*, No. M2012-02141-COA-R3-CV, 2012 WL 5265006, at *9 (Tenn. Ct. App. Oct. 25, 2012). On further appeal, our Supreme Court determined that, even though the parties had not specifically addressed the issue of the appropriate standard of review, the court would apply the strict scrutiny standard in the case, without adopting the standard as a matter of Tennessee jurisprudence. *City of Memphis v. Hargett*, 414 S.W.3d. 88 (Tenn. 2013).[6]

---

[6] The court stated in this regard:

This Court has not previously addressed the standard of review applicable to claims arising under article I, section 5 of the Tennessee Constitution. The Court of Appeals determined that laws burdening the right to vote "must be subjected to strict scrutiny." While the Plaintiffs challenge the Court of Appeals' analysis of their claims, they maintain that strict scrutiny is the proper standard of review. The Defendants agree, conceding that "the Court of Appeals correctly applied the strict scrutiny standard of review." Notably, however, the United States Supreme Court has rejected the notion that strict scrutiny applies to every statute imposing a burden on the right to vote under the United States Constitution. Instead, addressing claims arising under the First and Fourteenth Amendments, the Court has adopted a "more flexible standard," pursuant to which a showing of important governmental regulatory interests may justify lesser restrictions on the right to vote, whereas strict scrutiny is reserved for laws that impose " 'severe' restrictions." Thus, there is a potential question as to whether this Court should adopt a more stringent standard for voting rights challenges under article I, section 5 than is applied under the United States Constitution. While this Court "is always free to expand the minimum level of protection mandated by the [F]ederal [C]onstitution," *Burford v. State*, 845 S.W.2d 204, 207 (Tenn.1992), we are reluctant to do so where the parties have not specifically addressed the issue. Accordingly, based on the Defendants' concession, we will assume, rather than decide, that strict scrutiny applies, leaving for a future case the issue of which standard of review to adopt for claims arising under article I, section 5.

*Hargett*, 414 S.W.3d at 102 (Tenn. Oct. 17, 2013) (internal citations and footnotes omitted).

-5-

In light of the express language guaranteeing the right to vote in Article I, § 5[7] and Article IV, § 1[8], and consistent with our holding in *Hargett*, we have determined that the right to vote is fundamental under the Tennessee Constitution and that, accordingly, a strict scrutiny analysis is the appropriate standard to be applied to our consideration of Mr. Johnston's challenge to Tenn. Code Ann.§ 2-7-112(a)(1)(B).[9]  Under this standard, the legislation must be justified by a compelling state interest and must be narrowly drawn to advance that interest.  *Hawk v. Hawk*, 855 S.W.2d 573, 579, and nn. 8, 9 (Tenn. 1993).

We also consider the standard applicable to our review of a trial court's ruling on a Tenn. R. Civ. P. 12 motion to dismiss for failure to state a claim.  Such motion only

---

[7]  Article I, § 5 of the Tennessee Constitution provides:

The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction.

[8]  Article IV, § 1 provides in pertinent part:

Every person, being eighteen years of age, being a citizen of the United States, being a resident of the State for a period of time as prescribed by the General Assembly, and being duly registered in the county of residence for a period of time prior to the day of any election as prescribed by the General Assembly, shall be entitled to vote in all federal, state, and local elections held in the county or district in which such person resides. All such requirements shall be equal and uniform across the state, and there shall be no other qualification attached to the right of suffrage.

The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.

[9]  We respectfully disagree with Defendants' argument that *Ledgerwood v. Pitts*, 125 S.W. 1036 (Tenn. 1910) and *Vertress v. State Bd. of Elections*, 214 S.W. 737 (Tenn. 1919) stand for the proposition that municipal elections are not subject to the provisions of Art. I, § 5 or Art. IV, § 1.  The *Vertress* court specifically rejected such a reading of its holding in *Ledgerwood* when it stated:

The question for decision in Ledgerwood vs. Pitts was the validity of a compulsory primary law. There was no occasion in that case for this court to make any declarations as to the bearing of the Constitution upon elections to any office, state or municipal.  It was only necessary for the court to decide whether any provisions of the Constitution related to the selection of party nominees for office.  Other things were dicta, and furnish no authority for the arguments of counsel in this case.

*Vertress*, 214 S.W. at 738.

-6-

challenges the legal sufficiency of the complaint and should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978). Making such a determination is a question of law, which we review *de novo*, with no presumption of correctness accorded the trial court's ruling. *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). In evaluating whether a statute is constitutional, "we begin with the presumption that an act of the General Assembly is constitutional." *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003). Thus, we must resolve every doubt in favor of the statute's constitutionality. *Id. see also Chattanooga-Hamilton Cnty. Hosp. Auth. v. City of Chattanooga*, 580 S.W.2d 322, 326 (Tenn. 1979).

## B. ANALYSIS

### 1. Constitutionality of Tenn. Code Ann. § 2-7-133(i) as written

Tenn. Code Ann. § 2-7-133(i) provides:

> Any person attempting to be elected by write-in ballots shall complete a notice requesting such person's ballots be counted in each county of the district no later than twelve o'clock (12:00) noon, prevailing time, fifty (50) days before the general election. Such person shall only have votes counted in counties where such notice was completed and timely filed. The notice shall be on a form prescribed by the coordinator of elections and shall not require signatures of any person other than the write-in candidate requesting ballots be counted. The coordinator of elections shall distribute such form to the county election commissions. Upon timely receiving the notice required by this subsection (i), the county election commission shall promptly inform the state coordinator of elections, the registry of election finance, as well as all other candidates participating in the affected election. A write-in candidate may withdraw the notice by filing a letter of withdrawal in the same manner as the original notice was filed no later than the fifth day before the election.

Mr. Johnston contends that the statute violates Article I, § 5 and Article IV, § 1 of the Tennessee Constitution and does not serve any legitimate state interest justifying a restriction on the right to vote. He argues that the requirement that the write-in candidate request that the votes for that candidate be counted:

> . . . burdens a Tennessee citizen's right to vote because if that voter decides to vote for a write-in candidate, that voter would usually have no idea or means

-7-

of knowing of the notice requirement of TCA § 2-7-133(i) and whether the write-in candidate being voted for complied with the notice requirement of that statute. Thus Tennessee Citizens are voting for write-in candidates with the good-faith belief their votes are valid when, for reasons beyond their control, their votes are not being counted. In effect, these Tennessee voters have been disenfranchised.

In addressing this issue, it is appropriate to consider Tenn. Code Ann. § 2-7-133(i) in the context of the larger election law.[10]

In *Hargett* our Supreme Court reiterated that the state's interest in the integrity of the election process is "compelling." *Hargett*, 414 S.W.3d 88, 103 (Tenn. 2013). Consistent with that interest, the Election Code at Title 2 was adopted to "protect the freedom and purity of elections." *See Crowe v. Ferguson*, 814 S.W.2d 721, 723 (Tenn. 1991)(citing Caption to Public Acts 1972, Chapter No. 740). The code governs all elections for public office, candidacy for public office and referendum questions submitted to the people. Tenn. Code Ann. § 2-1-103. The purpose of the code is set forth at § 2-1-102:

The purpose of this title is to regulate the conduct of all elections by the people so that:
(1) The freedom and purity of the ballot are secured;
(2) Voters are required to vote in the election precincts in which they reside except as otherwise expressly permitted;
(3) Internal improvement is promoted by providing a comprehensive and uniform procedure for elections; and
(4) Maximum participation by all citizens in the electoral process is encouraged.

Tenn. Code Ann. § 2-1-102. The chapters in Title 2 address all components of the election process, including but not limited to voter registration, place and time of elections, election officials, ballots and supplies, absentee voting and determination of results.

Chapter 7 of Title 2, entitled "Procedure at the Polling Place," is comprehensive, containing statutes which, *inter alia*, set procedures for voting by machine and paper ballot,

---

[10] Defendants have not questioned whether Mr. Johnston, a write-in candidate, has standing to pursue the claim that the statute restricts the right to vote. In this regard, he does not allege that he was unable to vote or was confused as to whether his vote would be counted; he acknowledges that he did not comply with the statutory requirements. In our analysis and resolution of this case, it is not necessary to decide the standing issue.

counting ballots and certifying results, and securing ballot boxes and election supplies.[11] Tenn. Code Ann. § 2-7-133 governs which ballots may be counted, the way they are to be counted, and the manner in which questions arising from the voter's execution of the ballot are to be resolved.[12] It is within this context that § 2-7-133(i) requires a person to express consent to being a write-in candidate in order that the ballot be counted.[13]

---

[11] Voting by machine is governed by Tenn. Code Ann. § 2-7-113 and voting by paper ballot by § 2-7-114; Tenn. Code Ann. § 2-7-117 governs the procedure used for write-in candidates where voting machines are used.

[12] Tenn. Code Ann. § 2-7-133(a)–(h) provides:

(a) Only ballots provided in accordance with this title may be counted. The judges shall write "Void" on others and sign them.

(b) If the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled or on a question, the voter's ballot shall not be counted for such office and shall be marked "Uncounted" beside the office and be signed by the judges. It shall be counted so far as it is properly marked or so far as it is possible to determine the voter's choice.

(c) If two (2) ballots are rolled up together or are folded together, they shall not be counted. The judges shall write on them "Void" and the reason and sign them.

(d) Any ballot marked by the voter for identification shall not be counted. The judges shall write on it "Void" and the reason and sign it.

(e) Ballots which are not counted shall be kept together and shall be bundled separately from the ballots which are counted.

(f) Notwithstanding any other provision of law to the contrary, a vote shall be counted if a recount is undertaken on a punchcard ballot under the following conditions:

(1) When at least two (2) corners of the chad are detached;

(2) Light is visible through the hole; or

(3) An indentation of the chad from the stylus or other object is present and indicates a clearly ascertainable intent of the voter to vote.

(g) Notwithstanding any other provision of law to the contrary, if a voter marks a paper or optical scan ballot with a cross, "x", checkmark or any other appropriate mark within the square, circle or oval to the right of the candidate's name, or any place within the space in which the name appears, indicating an intent to vote for that candidate, it is a vote for the candidate whose name it is opposite. Underlining or circling the candidate's name would also constitute a vote. Any apparent erasure of a mark next to the name of a candidate may not be counted as a vote for that candidate if the voter makes another mark next to the name of one (1) or more different candidates for the same office and counting of the mark would result in an excess number of votes cast for the office.

(h) If a voter casts more than one (1) vote for the same candidate for the same office, the first vote is valid and the remaining votes are invalid.

[13] The qualifying procedures for candidates whose names are on the printed ballots are set forth in Chapter 5 of Title 2. Tenn. Code Ann. § 2-5-204 provides that the names of qualified candidates who have

(continued...)

The requirement at Tenn. Code Ann. § 2-7-133(i) that the write-in candidate submit the notice is the only verification in the code that the person consents to be a candidate; to that extent it is consistent with requirement at Tenn. Code Ann. § 2-5-101(b)(1) that a candidate who files a nominating petition sign the petition. Moreover, the requirement that the candidate request that votes for the candidate be counted allows election officials to know the nature and amount of supplies that will be necessary and the instructions to give to poll officials in order to accommodate those who wish to write-in their votes. Tenn. Code Ann. § 2-7-133(i) is narrowly written to accomplish that purpose and, along with other statutes, serves to insure that persons who desire to do so are able to run as and vote for write-in candidates, and that votes for those persons will be counted. The trial court correctly held that the statute is not unconstitutional on its face.

## 2. Constitutionality of Tenn. Code Ann. § 2-7-133(i) as applied

Mr. Johnston also argues that Tenn. Code Ann. § 2-7-133(i) is unconstitutional as applied. In support of his argument he cites to allegations of the complaint that "the Election Commission failed to post any notice to voters identifying write-in candidates who had filed the notice required by TCA § 2-7-133(i) and for whom ballots would be counted in the election" and that "the great majority of registered voters in District 18 were not aware that if they voted for a write-in candidate who had not complied with the notice requirement of TCA § 2-7-133(i), [and that] their vote for that write-in candidate would not be counted as part of the election results."

Initially, we note that Mr. Johnston ties this contention to his theory, discussed above, that the statute burdens the right to vote. To that extent, we reiterate our holding that the statute is constitutional as written and that any burden on the right to vote is justified by a compelling state interest.

We reject the notion that the Election Commission has a duty to post the notice that Mr. Johnston suggests. As stated earlier, the Election Code is comprehensive and we consider Tenn. Code Ann. § 2-7-133(i) in context. The duties of the county election commissions and registrars are set forth in Chapter 12 of Title 2 and there is nothing in that chapter that imposes such a duty on either the commission or the registrar.[14] It is necessary

---

[13](...continued)
filed nominating petitions are placed on the printed ballot.

[14] Tenn. Code Ann. § 2-12-111 sets forth the following requirements for publishing notices of elections:

(continued...)

for a write-in candidate to publicize and garner support for his or her candidacy, just as it is for a candidate who has filed a qualifying petition and is identified on the printed ballot. The trial court correctly held that the statute is constitutional as applied.

## C. CONCLUSION

For the foregoing reasons we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

---

[14](...continued)
(a) The county election commission shall publish, in a newspaper of general circulation in the county or municipality in which the election is to be held, a notice of all elections, except special elections, not less than twenty-one (21) days before the qualifying deadline for candidates in the election which shall be named in the notice.

(b) The county election commission shall publish, in a newspaper of general circulation in the county a notice of elections on questions not less than twenty (20) days nor more than thirty (30) days before the day of the election. The notice shall include in its entirety the resolution or other instrument requiring the holding of the election except for signatures or names.

(c) The county election commission shall publish, in a newspaper of general circulation in the county, a notice of every election, stating the day, time and polling places for the election, not more than ten (10) nor less than three (3) days before the day of the election.